ALBERT WEBER vs. JOHN D. BRYANT & others, executors.

Suffolk. March 19, 1894. — May 18, 1894.

Present: HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Public Charity.*

A bequest of a fund to be distributed "among and applied to such objects and purposes of benevolence or charity, public or private, including educational or charitable institutions and the relief of individual need, regardless of nationality or color, as the trustees for the time being shall deem worthy thereof," is a good public charitable bequest.

BILL IN EQUITY, filed December 13, 1893, by the plaintiff, as one of the next of kin and as assignee of the remaining next of kin of Frederick S. Weber, against the trustees and executors under the will of Frederick E. Weber, seeking to have the residuary clause thereof declared void, and to have it adjudged that, as to the portion of the testator's estate not specifically bequeathed or devised he died intestate, and to have such residue held for the benefit of his next of kin.

The residuary clause of the will is as follows:

"If, after all the aforesaid legacies and annuities are fully provided for, any surplus should remain in the hands of the trustees, I desire the same to be then distributed among and applied to such objects and purposes of benevolence or charity, public or private, including educational or charitable institutions, and the relief of individual need, regardless of nationality or color, as the trustees for the time being shall deem worthy thereof; and I give the trustees for the time being of such remaining property and estate full power and discretion and authority to appropriate and expend such remaining property in such manner as in their judgment may best promote the objects and purposes above mentioned."

The defendants demurred to the bill, and assigned as grounds thereof, 1st, want of equity; and 2dly, that the bequest was valid, and that there was no intestacy.

The Attorney General appeared and answered that in his belief a good public charity was created.

Hearing on the bill, demurrer, and answer of the Attorney General, before *Knowlton,* J., who, at the request of the parties, reserved the case for the consideration of the full court.

*C. J. Noyes, & C. E. Lydecker* (of New York), for the plaintiff.

*W. G. Russell,* for the defendants.

HOLMES, J. The plaintiff represents the next of kin of Frederick E. Weber, and brings this bill for the residue of his estate. The bill goes on the footing that the will attempts to dispose of the residue upon a trust set forth, and that the trust is void. At the argument, a suggestion was made that no property was given to his trustees beyond what was necessary to pay certain legacies, which were to be paid through the hands of trustees.

We see no ground for this suggestion. Certain legacies are to be paid by the executors as soon as reasonably may be,* and

---

* In the seventy-first article of his will the testator provides:

" Such of the legacies enumerated in articles one to sixty-nine inclusive as are to be paid without awaiting the legatees' arrival at a specific age, and not including herein payments of annuities, or gifts of certain sums each year during the life of the beneficiary (except such payments on account thereof as accrue and become due within two years from my decease), and not including the provision for the support of my nephew Frederick Hausding after said two years, but meaning hereby such legacies as may be paid at once and absolutely, and such payments on account of annuities and support as become payable within two years, I desire shall be paid by my executors as soon as reasonably may be in the usual course of settlement of my estate, and be included in their probate accounts accordingly.

" All property which may remain after such payments, and after the payment of debts, I desire to be turned over to the trustees under this my will, and I give and bequeath the same to them accordingly, as more fully hereinafter provided.

" As no one of my legatees or devisees would probably take my Lakeville Place estate, and as it may be expedient to sell the same in the course of settlement of my estate, I give full power and authority to the executors herein named, and to their substitutes and successors, whether as executors or as administrators with the will annexed, to sell at public auction or at private sale without license of court therefor, and at such price and on such terms of payment as they may deem for the interest of my estate, any real estate of which I may die seised and possessed, and any which may become part of my estate after my decease by foreclosure of mortgage or otherwise, and to make, execute, acknowledge, and deliver suitable instruments of conveyance thereof. And no purchaser of any property, real or personal, of

then " all property which may remain after such payments, and after the payment of debts," is given to the trustees. It is true that later, after explaining that certain bequests are to be paid through trustees, he says that " to that end " he gives to them " all the property and estate, of whatsoever name and nature, which may remain after the payment of my just debts, and of such legacies and other payments as are to be paid by the executors." But the words " to that end " do not cut down the amount of property given to the trustees; they only explain why he does not leave in the hands of the executors enough to pay all the legacies. Other language confirms the same view, but it hardly is necessary to cite it.

The residuary clause is as follows :

" If, after all the aforesaid legacies and annuities are fully provided for, any surplus should remain in the hands of trustees, I desire the same to be then distributed among and applied to

---

my estate, whether at sale by my executors, administrators with the will annexed, or by the trustees under my will, nor any corporation whose stock, bonds, or security of any kind shall be transferred upon the order of my executors, administrators, or trustees, shall be in any way liable for application of the purchase money or proceeds thereof, or by reason of such transfer.

" I also give full power and authority to my executors to adjust by compromise of arbitration, at their discretion, any and all claims not arising hereunder in favor of or against my estate, on such terms as they may deem for the interest of the estate.

" All legacies of which the payment is deferred to await the arrival of the legatee at a designated age, not reached within two years from my decease, nor before the transfer of the remaining property to the trustees under this will; all interest which may accrue and become due on such legacies after the expiration of said two years, and after such transfer to the trustees of the remaining property; all sums payable after said two years, and after such transfer of property as annuities or provisions during the life of the beneficiary; also all bequests in the articles of my will after the article relating to the New England Conservatory of Music, and numbered sixty-nine, — are to be paid through trustees, subject as herein provided, and to that end I give, devise, and bequeath all the property and estate, of whatsoever name and nature, which may remain after the payment of my just debts, and of such legacies and.other payments as are to be paid by the executors, to John D. Bryant, Daniel P. Wise, and Otto Kramer, hereinbefore named, to have and to hold [to] them and their heirs, executors, administrators, and assigns forever, but in trust nevertheless," for various trusts thereinafter specified.

such objects and purposes of benevolence or charity, public or private, including educational or charitable institutions and the relief of individual need, regardless of nationality or color, as the trustees for the time being shall deem worthy thereof ; and I give the trustees for the time being of such remaining property and estate full power and discretion and authority to appropriate and expend such remaining property in such manner as in their judgment may best promote the objects and purposes above mentioned."

The words " I desire," as here used, mean a command, in a polite form.

The question of the validity of the trust raised by the bill is pretty nearly settled by *Saltonstall* v. *Sanders*, 11 Allen, 446, which decided that a gift for " objects and purposes of benevolence or charity, public or private," with discretion as to the mode of expenditure in the trustees, was a good charity. The words of the present will evidently were copied from that case, and used in reliance upon it. We should not think of disturbing the decision. The only matter requiring consideration is whether the gift is invalidated by the words " including educational or charitable institutions, and the relief of individual need," which in the present will follow those just quoted. We are of opinion that the gift remains good. The later words are all governed by " including," and are merely specifications within the limits of the dominant phrase. As that phrase expresses good charitable purposes, and evidently has been selected because it has been decided to be valid, the relief of individual need referred to means such relief of individual need as is consistent with the validity of the gift. It is used here only as the alternative of a gift to an institution. Ultimately every charitable fund must be applied to the relief of individual need, but the trustees are given the choice of leaving the final distribution to others, or of acting as almoners themselves. See, further, *Bullard* v. *Chandler*, 149 Mass. 532. Of course, trustees may be allowed discretion in selecting the objects of the testator's bounty, if they are not permitted to go beyond the bounds of charity, and indefiniteness in the persons to be benefited is characteristic of public charities.

*Demurrer   sustained.*