In Equity.

CHARLES J. DUNN, Trustee, *vs.* SARAH MORSE et als.

Penobscot. Opinion June 21, 1912.

*Equity.   Charitable Uses.   Charitable Institution.   Intention.   Income.*
*Trust Fund.   Inheritance.   Trustee.   Will.   Designation.*

1. The will of J. P. P. provides that Robert W. and Esther A. during their life, or during the life of the survivor, may designate any needy relative of J. P. P. testator as heirs to the trust fund to such an amount as they deem advisable. This is construed as vesting in Robert W. and Esther A. a discretion as to whether or not any of the relatives of J. P. P. should inherit from the trust fund.

2. It was a personal privilege or confidence given to them and they not having designated in their lifetime any such needy relatives, it is to be presumed that it was their judgment that it was not advisable that the relatives should have any part of the trust estate and that the personal privilege of confidence cannot be exercised by the court.

3. That the residue of the trust fund, after the death of Robert and Esther and their widow or widower, if any, should be paid over to an institution, or institutions, for the relief of suffering humanity.

4. A person accepting a trust is bound to execute the trust and to carry out the intention of the testator.

5. R. W. and E. A. having accepted the trust, the power of selecting the institution, or institutions, becomes imperative and must be executed, and not having been executed in their lifetime, the court will not allow the trust to fail for lack of a trustee.

In equity. On report. Bill sustained. Decree according to opinion.

Bill in equity against eighteen defendants praying for the construction of the will of James P. Parker, late of Bangor. In addition to the defendants named in the bill, the Bangor Young Men's Christian Association located at Bangor, and the Good Samaritan Home also located at Bangor, were by leave of court admitted as parties defendant. Answers were filed by all the defendants. The cause was then reported to the Law Court "to be determined by that court upon the bill and answers," it being "agreed that the facts set forth in the bill and answers are true." It was also stipulated as follows: "If the court sustains the trust it is agreed that the Good Samaritan Home and the Bangor Young Men's Christian Association may be further heard before a single justice upon the merits of their application for a portion of the whole of the property in question."

The case is stated in the opinion.

*Charles J. Dunn*, pro se.

*Charles H. Bartlett*, for all defendants except three.

*John Wilson*, for Eastern Maine General Hospital.

*Edgar M. Simpson*, for Bangor Young Men's Christian Association, and Good Samaritan Home.

SITTING: WHITEHOUSE, C. J., CORNISH, KING, BIRD, HALEY, HANSON, JJ.

HALEY, J. This is a bill in equity brought by the plaintiff as trustee under the will of James P. Parker, asking for a construction of certain provisions of the will of said Parker, and directions as to his duties as trustee under said will, with the stipulation that, if the court sustains the trust, the Good Samaritan Home and the Bangor Young Mens' Christian Association may be further heard before a single justice upon their application for a portion or the whole of the property in question.

James P. Parker died at Bangor, of which city he was a resident, on August 1, 1892, leaving as his next of kin and heirs at law Robert W. Parker and Esther A. Crombie. His will was duly proved and allowed at the August term, 1892, of the Probate Court of that county; it being the court that had jurisdiction of the estate of said Parker. Robert W. Parker and Esther A. Crombie were named as executors in said will, and their appointment was confirmed by the Probate Court allowing the will. They were also, by the terms of said will, appointed trustees; but their appointment as trustees was never confirmed by the Probate Court, and they never gave bond as trustees, presumably thinking that, because they were by the will excused from giving bonds as executors, they were excused from giving bonds as trustees. They acted jointly as executors and as trustees under said will until the death of Robert, who died March 24, 1905, leaving a will, by the terms of which his entire estate was devised and bequeathed to his widow, Belle C. Parker, who died April 19, 1906, and whose heirs at law are defendants, and claim one-half of the residue of the estate of said James P. Parker as heirs of Belle C. Parker. After the death of Robert W. Parker, said Esther A. Crombie acted as sole and surviving trustee until, because of mental incapacity, she was removed, and Charles J. Dunn, the plaintiff, was appointed and qualified as trustee under the will of said James P. Parker. Esther A. Crombie died, intestate, on September 4, 1910, and her heirs at law are defendants, and claim one-half of the residue of the estate of said James P. Parker as heirs of said Esther A. Crombie.

By the first item of the will of James P. Parker, he gave and bequeathed to his brother Robert W. Parker and to his sister Esther A. Crombie, each, the sum of $2500. Item 2 of said will, which is the one item upon which there is a disagreement, is as follows:

"Second. I give, bequeath and devise to my brother, Robert W. Parker, and my sister, Esther A. Crombie, jointly or to the survivor, in trust, as hereinafter specified, all the rest, residue and remainder of my Estate, real and personal and mixed of every description, however located and wherever situated.

"I authorize my said trustees or the surviving Trustee, to lease, sell convey and invest, any and all of my said estate, and invest and

reinvest the proceeds of same, and all moneys that may come to hand from my said Estate in any way.

"And the income therefrom to be equally divided between the said Robert W. Parker and Esther A. Crombie said Trustees during their lives.

"In case of death of one of said Trustees, the surviving Trustee to have the sole management of the Trust Estate, retaining one-half of the income to him or her own use and benefit, and from the other half of the income paying to the husband or widow of the deceased Trustee, so much of said income not exceeding Five Hundred Dollars, provided, the half of the income amounts to Five Hundred Dollars. Where the one-half of the income exceeds the Five Hundred Dollars the Trustee may carry the Surplus to the Trust fund, or may use such part as he may designate to assist any needy relative of James P. Parker, or use it for any other purpose they may deem proper.

"The Trustees shall see that the family burial lot receives proper and perpetual care, and they shall have the right to make any change, or get any stones or monuments they may think best, drawing from the Trust fund the amount necessary for such expense.

"In case of death of both Trustees, a Trustee is to be appointed by the Probate Court on petition of the surviving husband or widow or the survivor of them, and said income as hereinbefore designated to be paid to them or the survivor during their life.

"The said Robert W. Parker and Esther A. Crombie during their lives or during the life of the survivor, may designate any needy relatives of James P. Parker as heirs to the Trust Estate, to such an amount as they deem advisable; and the residue to be given to Institution or Institutions for the relief of suffering humanity as may be deemed by said Robert W. Parker and Esther A. Crombie or the survivor of them, as most worthy of it, and shall be designated as the James P. Parker legacy. To be paid over and transferred at the expiration of the Trust, after the death of said Robert W. Parker and Esther A. Crombie and the widow and husband of said Robert W. Parker and Esther A. Crombie.

"In case the Trustees cannot agree in regard to the carrying out any of the provisions of this will, they shall refer all such matters to any Justice of the Supreme Judicial Court."

During the lifetime of said Robert W. Parker and Esther A. Crombie, they designated the Eastern Maine General Hospital as one of the institutions to receive four thousand dollars of the trust fund, and this sum was turned over to the said hospital in the lifetime of said trustees, with the agreement that, during the lifetime of either of them, or their surviving widow or husband, the income should be paid according to the terms of said will, and at the death of both of said trustees, and their widow and widower, if any, the fund should become the absolute property of the Eastern Maine General Hospital, and said hospital claims that by that designation they became one of the institutions mentioned in the will and entitled to share in the residue of the trust fund, and are defendants in this bill, and have filed an answer thereto claiming the fund. The Young Men's Christian Association of Bangor have, by leave of court, been made a defendant, and have filed an answer, claiming that they are an institution entitled to share in said fund. The Good Samaritan Home, a charitable corporation located at Bangor, have also, by leave of court, been made a defendant, and have filed an answer, asking the court to turn over to them said fund, or a part thereof, to be used by them for the benefit of suffering humanity.

It is the claim of the heirs of Robert W. Parker and Esther A. Crombie that, as said Robert W. Parker and Esther A. Crombie, during the lifetime of both, or said Esther A. Crombie during her lifetime as the surviving trustee, did not designate or select any institution, or institutions, for the relief of suffering humanity, to receive the residue of said estate held by them in trust, the gift to them as trustees determined, lapsed, and became part of the estate of James P. Parker and descended to his heirs or next of kin, and one-half thereof passed by the will of Robert W. Parker to Belle C. Parker, the widow of Robert W. Parker, and one-half to the heirs of Esther A. Crombie.

It is claimed, on the other hand, that the residue of the estate after the death of said Robert W. Parker and Esther A. Crombie, the widow of Robert W. Parker and the husband of Esther A. Crombie, should be used for the relief of suffering humanity and given to some institution, or institutions, for that purpose, as provided in the will; that said Robert W. Parker and Esther A.

Crombie, by neglecting during their lifetime to designate the institution, or institutions, which should receive the fund, did not defeat the object of the testator; that it was a gift for charitable uses; and that the court should not allow the bequest to be defeated, but devise a scheme whereby the intention of the testator may be carried out.

No claim is made but that it was the duty of the trustees to carry out the provisions of the will as far as it related to the burial lot of James P. Parker. This not having been done, it is the duty of the present trustees to carry out the wishes of the testator as to the burial lot and charge the trust fund with the expense thereof.

The first question raised is as to the right of the relatives of James P. Parker to share in the trust fund under the following provision of the will:

"The said Robert W. Parker and Esther A. Crombie during their life, or during the life of the survivor, may designate any needy relative of James P. Parker as heirs to the trust fund to such an amount as they deem advisable."

The above must be construed as vesting in Robert and Esther a discretion as to whether or not any of the relatives of James P. Parker should inherit from the trust fund. It was a personal privilege, or confidence given to them, and, they not having designated in their lifetime any such needy relatives, it is to be presumed that it was their judgment that it was not advisable that the relatives should have any part of the trust estate, and that the personal privilege or confidence cannot be exercised by the court. It was only such as they, or the survivor of them, deemed advisable that were to inherit, and the provision of the will that the residue of the trust fund, after the death of Robert and Esther, and their widow and widower, if any, should be paid over to an institution, or to institutions, for the relief of suffering humanity, clearly shows that the testator did not intend that any of his needy relatives should inherit unless they were designated to share in the fund by Robert and Esther, or the survivor of them.

That the bequest to Robert W. and Esther A. was a valid bequest for charitable uses is too well established to be questioned. *Drew* v. *Wakefield*, 54 Maine, 291; *Everett* v. *Carr*, 59 Maine, 325; *Fox* v. *Gibbs*, 86 Maine, 87; *Bartlett* v. *King*, 12 Mass., 537; *Minot* v.

*Baker,* 147 Mass., 350; *Bullard* v. *Chandler,* 149 Mass., 532; *Going* v. *Emery,* 16 Pick., 107; *Haynes* v. *Carr,* 70 N. H., 463; *Jones* v. *Habersham,* 107 U. S., 174.

In construing the will of the testator we must ascertain, if possible, from the will itself the intention of the testator. What was the object that James P. Parker had in mind in making the trust provision contained in his will? He had provided for his brother Robert and his sister Esther by giving to them absolutely $2500 each. He provided that they should have the income of the trust fund during their lifetime, or the lifetime of the survivor, and that the widow and widower, if any, should have the income during their life. His object seems to have been to protect his brother and sister, their husband and wife, during their lifetime, by the terms of his will and the trust created thereby. There seems to have been no other relative whom he desired should receive any part of his estate. Having made all the provisions that he desired to make for his relatives, his object was to give the trust fund, after the death of the parties therein named, to charity. He had made all the provisions for them that he desired, unless Robert W. and Esther A. should designate certain relatives as heirs to the trust fund, which he gave them the power to do. He intended to dispose of all his property by the will. That he did not intend to die intestate as to any of his property is conclusively shown by the provision that the remainder of the trust fund that included all not specifically disposed of, was to be paid over and transferred at the expiration of the trust, after the death of Robert W. and Esther A. and the widow and husband of said Robert W. and Esther A. It being the intention of the testator to dispose of all his estate, the residue was to be given to an institution, or institutions, for the relief of suffering humanity, and the power of selecting the institution, or institutions, who were to receive the residue of the trust fund was conferred upon Robert W. and Esther A., who were the trustees of the fund, held the legal title, and had a beneficial interest in the income for their lives.

They having accepted the trust, and received the income for themselves under the terms of the trust, it was their duty to exercise the power given them by the will under which they held the fund, and carry out the intention of the testator, and to designate the

institution, or institutions, for the relief of suffering humanity that they deemed most worthy of it; but, by reason of death and infirmity, they neglected to perform that duty.

"In this class of cases the power is so given that it is considered a trust for the benefit of other parties, and when the form of the gift is such that it can be construed to be a trust, the power becomes imperative, and must be executed." I Perry on Trusts, sec. 372. A person accepting a trust is bound to execute the trust, and to carry out the intention of the testator as expressed by the language creating the trust. In this case it was the intention of the testator that the residue of the trust fund should be given to an institution, or institutions, for the relief of suffering humanity, and Robert W. and Esther A. having accepted the trust, the power of selecting the institution, or institutions, became an imperative power or direction, and not having been executed in their lifetime, the court will not allow the trust to fail for lack of a trustee, but by its decree will execute the power, the execution of which was neglected in the lifetime of Robert W. and Esther A. In other words, the court will see to it that the intention of the testator is not defeated by the neglect of those to whom he had intrusted the power to designate the institution, or institutions, to receive the fund. The court will put itself in the place of the trustee, and will execute the power by the most equitable rule. "If the trust or power can by any possibility be exercised by the court, the non execution by the party intrusted shall not prejudice the party beneficially interested or the cestui que trust." Perry on Trusts, 249; *Drew* v. *Wakefield,* 54 Maine, 291; *Cutter* v. *Burroughs,* 100 Maine, 379; *Woodroof* et al. v. *Hundley,* 147 Ala., 287; *Sawtelle* v. *Williams,* 94 Wis., 412; *Towle* v. *Nesmith,* 69 N. H., 216; *Bullard* v. *Chandler,* 149 Mass., 532; *Minot* v. *Baker,* 147 Mass., 350; Perry on Trusts, sec. 20; I Perry on Trusts, sec. 249.

In constituting an imperative power or direction, it is not necessary that the appointing words shall be a command; it is sufficient if the language of the testator, in creating the trust, and stating its purpose and object, is such that the reasonable inference of the language shows that it was the intention that it should be imperative. "In the ordinary cases of trusts for such persons of a class as the trustee shall select, when a duty to select is imposed upon

the trustee by implication, a general intent to benefit the class is recognized, and the trust will not fail if the trustee accept it and then fails to make a selection." *Minot* v. *Baker,* 147 Mass., 350, supra. In this case the trust fund, with its beneficial use for life, went to Robert W. and Esther A. It was to be paid over after their death, and the death of their husband and wife, to an institution, or institutions, for charitable purposes. They were given the power to designate that institution, or those institutions, and the reasonable inference to be drawn from the language is that he intended that they should carry out his intention and designate the institution, or institutions, and they so understood it and attempted by the gift to the Eastern Maine General Hospital of a part of the trust fund, to execute the power which it was their duty to execute.

This case differs from the case of *Fontaine* v. *Ravenil,* 17 How., 369, the court holding in that case that, as the property had never passed out of the testator, it necessarily remained as a part of his estate. In this case the property did pass out of the testator's estate; it was given in trust to Robert W. and Esther A. The legal title passed to them, and the testator so understood it when he said, "they are authorized to lease, sell, convey and invest any and all of my said estate," and a time was fixed when the residue should be given to an institution, or institutions, for the relief of suffering humanity. The legal, and beneficial interest (for the life of those mentioned in the will) passed from the estate of Robert to the trustees and a valid trust was created, and, as said by the court in the above case, "a power when coupled with a trust, if not executed before the death of the trustee, at law the power is extinguished, but the trust in chancery is held to survive. . . . Had he declared that the residue of his estate should be applied to certain charitable purposes, under the statute of 43 Elz., or on principles similar to those of the statute, effect might be given to the bequest as a charity. The words as to the residue of his property were used in reference to the discretion to be exercised by his executors, without that action, he did not intend to dispose of the residue of his property."

In this case the testator did not intend, by giving to Robert W. and Esther A. the power of designating the institution, or institutions, to receive the fund, to confer a mere power; the property

had been given to them in trust, it had passed from the estate of James P. Parker, and had become a trust fund in which his estate had no interest, and by the will creating the trust the residue of the trust fund was to be applied to charitable purposes, and, as said in the above case, "effect might be given to the bequest as a charity."

It being the opinion of the court that the bequest in question was a valid gift to charitable uses, that it was the duty of Robert W. and Esther A. to have selected the institution, or institutions, to receive the residue of the trust fund, and that by their neglecting to do so during their lifetime, the trust did not fail and fall into the estate of James P. Parker. That it is the duty of the court to place itself in the place of the trustees, and to devise a scheme to carry out the intention of the testator whereby the residue of the trust fund may be given to an institution, or to institutions, for the relief of suffering humanity.

> *According to the stipulation, the case to be remanded and heard before a single Justice, as to the proper charitable institution, or institutions, to share in the fund. Bill sustained with cost. Decree accordingly.*