(No. 6508.   July 27, 1938.)

MARIA HEDIN, OTTO JOHANNESSON and CARL WILLIAM NELSON, Appellants, v. WESTDALA LUTHERAN CHURCH, THE SWEDISH MISSION CHURCH, Troy, Idaho, THE BETHANY OLD PEOPLE'S HOME, Spokane, Washington, JENNIE BACHMAN, VIRGINIA SHIRLEY BACHMAN, GERALDINE BACHMAN, and OLE BOHMAN, Troy, Idaho, Respondents.

[81 Pac. (2d) 741.]

Murray Estes and Latham D. Moore, for Appellants.

Verner R. Clements and A. H. Oversmith, for Respondents.

MORGAN, J.—The appeal in this case brings before us for consideration the will of Johan Johannesson, the sixth paragraph of which is as follows:

"*Sixth:*—All of the rest, residue and remainder of my property, whether the same be real, personal or mixed and wheresoever the same may be situated, I will, devise and bequeath to O. Bohman of Troy, Idaho, as trustee and in trust, however, for the following purposes:—That the said O. Bohman, as such trustee, shall handle and manage all of such property, including the leasing of any real estate and the loaning of any funds which may come into his hands on safe securities, and shall sell and dispose of any real estate I may own at the time of my death which is not otherwise disposed of in this my Last Will and Testament, and shall pay out such moneys for charitable or religious purposes from time to time as my said trustee may elect, giving and granting unto the said O. Bohman, as trustee, full power and absolute authority to distribute such moneys as may come into his hands as such trustee for any and all such charitable or religious purposes as my said trustee may elect from time to time, and that any property I own at the time of my death may be sold, handled or leased by my said trustee and executor without order of court except as otherwise provided by law, and that such moneys paid out for charitable and religious purposes may be paid out by my said trustee and executor without any order of court and without approval of the Court, save and except that my said executor and trustee shall annually report to the Probate Court of Latah County, State of Idaho, in the matter of my estate, all expenditures or payments of money for

charitable or religious purposes which may be paid out during the preceding year. It being further my will that the said O. Bohman as such trustee shall be entitled to compensation for his services as such trustee and for his reasonable expenses in carrying out this trust, and such compensation and expenses shall be reported to the Probate Court of Latah County, State of Idaho, and approved by such Probate Court.''

Appellants contend this bequest is so vague and indefinite as to the time and manner of disposition of the trust funds therein sought to be provided for, and as to the identity of the beneficiaries as a class, that it is void for uncertainty.

It would be impossible to harmonize the decisions of the courts of this country on the question here presented, and we shall not attempt to do so, but will cite, and briefly quote from, some of the cases sustaining the rule which appears to us to be most nearly in harmony with the legal structure of Idaho.

The courts seem to be unanimous in the opinion that the creator of a private trust must designate the beneficiary. In England, and in some of the states of this country, a rule has been established, in the interest of trusts for public charitable uses, whereby they will be upheld although the beneficiary is not designated. Trusts so upheld are dependent upon the English doctrine of *cy pres,* whereby the king, or the chancellor as the keeper of the king's conscience, has the power, acting ministerially as distinguished from judicially, to designate the beneficiary of a trust for charitable uses, where one has not been designated by the donor or where, for any cause, the trust would fail without such ministerial action. Here, we have no king and, in this state, we have no court with such ministerial power.

In Perry on Trusts, seventh edition, volume 2, page 1222, section 718, it is said:

''In studying the cases upon charitable uses, cited in the preceding sections, it is necessary to bear this suggestion constantly in mind: in England the court of chancery, or the Lord Chancellor, exercised a double function,—the one a judicial function, in adjudicating upon the legal question arising upon charitable gifts; the other a ministerial func-

tion, as keeper of the king's conscience. The general superintendence or administration of all charities was in the king as *parens patriae*. The judicial part of this administration the king intrusted to the ordinary equity jurisdiction of the court of chancery. That part of the king's jurisdiction over charities which did not come within the ordinary equity jurisdiction of the court, the king exercised as part of his prerogative by his sign-manual. The chancellor often exercised this prerogative power of the king; and thus many charities have been established and administered by the chancellor, and no very clear line has been drawn between those established by him exercising his ordinary judicial power in the court of chancery, and those established by the extraordinary or prerogative power of the crown exercised through the chancellor.''

Although the doctrine of *cy pres* has not been generally adopted in the United States of America, some of the very able courts of this country seem to have failed to observe the distinction pointed out in the above quotation and have proceeded as if American courts possessed the powers of the King of England when acting in his capacity as father of his country.

In Pomeroy's Equity Jurisprudence, fourth edition, volume 3, page 2305, section 1027, it is said:

''In administering charitable gifts, the English courts have leaned so strongly in favor of sustaining the trusts, even when the donor's specified purpose becomes impracticable, that they invented at an early day, and have fully established, the so-called doctrine of *cy-pres*. The doctrine may be stated in general terms as follows: Where there is an intention exhibited to devote the gift to charity, and no object is mentioned, or the particular object fails, the court will execute the trust *cy-pres*, and will apply the fund to some charitable purposes, similar to those (if any) mentioned by the donor. 'If the donor declare his intention in favor of charity indefinitely, without any specification of objects, or in favor of defined objects which happen to fail from whatever cause,— even though in such cases the particular mode of operation contemplated by the donor is uncertain or impracticable,—yet the general purpose being charity, such purpose will, not-

withstanding the indefiniteness, illegality, or failure of its immediate objects, be carried into effect.' In the first kind of cases, where the donor has specified no object, the court will determine upon some scheme which shall carry out the general intention; in the second kind, where the donor's specified object fails, the court will determine upon another object similar to that mentioned by the donor. A limitation upon the generality of the doctrine seems to be settled by the recent decisions, that where the donor has not expressed his charitable intention generally, but only by providing for one specific particular object, and this object cannot be carried out, or the charity provided for ceases to exist before the gift takes effect, then the court will not execute the trust; it wholly fails. The true doctrine of *cy-pres* should not be confounded, as is sometimes done, with the more general principle which leads courts of equity to sustain and enforce charitable gifts, where the trustee, object, and beneficiaries between are simply *uncertain*. There is a radical distinction between the two, although the doctrine of *cy-pres* may be to some extent an expansion or enlargement of the other principle. In the great majority of the American states the courts have utterly rejected the peculiar doctrine of *cy-pres* as inconsistent with our institutions and modes of public administration. A few of the states have accepted it in a modified and partial form.''

The Supreme Court of North Carolina, in *Holland v. Peck,* 37 N. C. 187, said, on page 191:

''It is certainly the general rule that where property is given upon a clear trust, but for uncertain objects, the subject of such trust is regarded as undisposed of, and the benefit of the trust results to those to whom the law gives the property in default of disposition by its owner. In the case of a trust there must be somebody in whose favor the court can decree a performance.''

In *People v. Powers,* 147 N. Y. 104, 41 N. E. 432, 35 L. R. A. 502, it is said:

''But, where the gift to a charitable use is so indefinite as to be incapable of being executed by a judicial decree, the gift is void. *Holland v. Alcock,* 108 N. Y. 312, 16 N. E. 305, 2 Am. Rep. 420; *Holmes v. Mead,* 52 N. Y. 332; *Prichard*

*v. Thompson*, 95 N. Y. 76, 47 Am. Rep. 9; *Read v. Williams*, 125 N. Y. 560, 26 N. E. 730, 21 Am. St. 748; *Levy v. Levy*, 33 N. Y. 97.''

Some of the provisions in the will in *Bristol v. Bristol*, 53 Conn. 242, 5 Atl. 687, are similar to the one here under consideration.

In the Bristol will, it was provided:

''And I do hereby authorize, empower, and direct my beloved wife, Martha Amelia Bristol, to permanently dispose of, for such charitable purposes as she may deem proper, the other one-fourth of said remaining interest, income, and profit accruing from said permanent trust fund.''

With respect to that provision the Supreme Court of Errors of Connecticut said:

''It is very clear that this is not a gift to the wife herself, which she can take discharged of the trust, as it merely gives her a power to appoint the charitable use. Is it, then, valid as a gift to charitable uses under our statute on that subject? Whatever might be held on this question by the courts of England, or of those states which have adopted the English doctrine on the subject, it is very clear that under our own decisions, which have established a definite rule on the subject in this state, this bequest cannot be held valid. It is well established with us that a gift to a charitable use must designate the particular charitable use by making the gift to some charitable corporation, whose charter provides for a charitable use of its funds, or to some particular object or purpose that the law recognizes as charitable. It is enough if the object be mentioned, and the law can see that it is a charitable one; but it is not enough that the gift be merely 'to charitable uses,' or 'to be used in charity,' so long as no selection is made from the long list of recognized charitable objects. And it is not enough that some person is named to whom is given the power of naming the charity. That is the testator's own matter. It is his intent that is to determine that. If he chooses to leave the matter wholly to the discretion of some person named, he can do so by making the gift to him, leaving him to use his discretion as to the disposition of it. In this case the donee takes absolutely, and the law does not trouble itself as to whether he acts conscientiously

in the matter. The testator has chosen to leave the matter to uncertainty, and there the law leaves it. The charitable object, thus required to be named, may be a benefit to a class of persons, and therefore uncertain as to the particular persons of the class that are to receive the benefit. This uncertainty may make the bequest void, unless there is a power given to some person or corporation to make a selection of the individuals. *White v. Fisk,* 22 Conn. 50; *Adye v. Smith,* 44 Conn. 70; *Fairfield v. Lawson,* 50 Conn. 501, 513; *Coit v. Comstock,* 51 Conn. 379; *Tappan's Appeal,* 52 Conn. 412. Here the power given the widow is not to select the particular beneficiaries of a class named, but to select the charity itself. We think that, to uphold this bequest, we should have to go beyond the utmost limit to which we have gone in upholding charitable gifts.''

In *Gooding v. Watson's Trustee,* 235 Ky. 562, 31 S. W. (2d) 919, 922, the Court of Appeals of Kentucky quoted from *Coleman v. O'Leary's Exr.,* 114 Ky. 388, 70 S. W. 1068; 24 Ky. Law Rep. 1248, saying:

''The donor must select his charity. He may delegate power to select the individual recipients of his bounty, but a gift to charity in general is too vague to be enforced. *Spalding v. Industrial School,* 107 Ky. 382, 54 S. W. 200, 21 Ky. Law Rep. 1107. A charitable use which is relieved from the operation of that rule must be so definitely expressed that the courts can judicially, and with reasonable certainty, apply the gift to that object.''

In *Jones v. Patterson,* 271 Mo. 1, 195 S. W. 1004, L. R. A. 1917F, 660, the Supreme Court of Missouri had under consideration a will wherein the testatrix left all her property to her husband during his lifetime and wherein she stated:

''he is to use the income off of this property for his own use and benefit, and at his death, I want it placed in the hands of Clifford Patterson (my nephew) to be used for missionary purposes in whatever field he thinks best to use it, so it is done in the name of my dear Savior and for the salvation of souls.''

Commenting on that provision, the court said:

''Under such circumstances it cannot be reasonably concluded that the trust created is of such a nature as to enable.

it to be controlled by the courts, or in other words, the trustee on account of the absolute power attempted to be conferred, may from the words used, not inappropriately be classified as an owner of the property rather than one charged with the execution of a trust.

"Further than this, the generality of the words employed is such that it cannot be known what class of persons is entitled to the benefit sought to be conferred or what that benefit will consist in. The entire matter is, in fact, left to the wisdom, or it may be, the whim or caprice of the trustee. Strong and far-reaching as is the arm of equity in upholding a charity, the one here sought to be created is beyond its grasp."

In *Hadley v. Forsee,* 203 Mo. 418, 101 S. W. 59, 14 L. R. A., N. S., 49, the Supreme Court of Missouri said, on page 61:

"So, in the case at bar, though a general intent to advance the cause of religion and promote the cause of charity appear, yet, in the absence of any provision in the will showing how that purpose is to be put into effect, the court is powerless. If in such case it should undertake to designate the church or charity to be benefited, it would assume to do for the testator what he did not do for himself."

The Supreme Court of Alabama, in *Crim v. Williamson,* 180 Ala. 179, 60 So. 293, said, on page 294:

"In every state in the Union, including Alabama, where the *cy pres* doctrine is not recognized, it is the settled law that, although the particular individuals who are to benefit by the charity need not be specified, still the object of the charity must be named or described. The want of a trustee will not defeat the charity, but the object of the charity must be ascertained, else the court would have to substitute its own selected charity or permit the trustee to select the charity and which the law does not authorize. . . . . Where the'gift for a charitable use is so indefinite as to be incapable of being executed by a judicial decree, the gift is void."

In *Tilden v. Green,* 130 N. Y. 29, 28 N. E. 880, 888, 27 Am. St. 487, 14 L. R. A. 33, this appears:

"As the selection of the objects of the trust was delegated absolutely to the trustees, there is no person or corporation who could demand any part of the estate, or maintain an

action to compel the trustees to execute the power in their favor. This is the fatal defect in the will. The will of the trustees is made controlling, and not the will of the testator. Such an authority is in contravention of the statute of wills. That statute authorizes a person to 'devise' his real estate, and 'to give and bequeath' his personal property, but it does not permit him to delegate to another the power to make such disposition for him. As was said by the learned presiding justice of the general term, 'the radical vice of the entire provision seems to have arisen from the testator's unwillingness to confer any enforceable rights upon any qualified person or body.' "

See, also, *Gambell v. Trippe,* 75 Md. 252, 23 Atl. 461, 32 Am. St. 388, 15 L. R. A. 235; *In re Ford's Estate,* 144 Minn. 454, 175 N. W. 913; *Wentura v. Kinnerk,* 319 Mo. 1068, 5 S. W. (2d) 66; *Kinnear v. Ballagh,* 109 N. J. Eq. 27, 156 Atl. 269.

The sixth paragraph of the will before us, when read in the light of the foregoing authorities, is found wanting. The testator sought to invest his executor and trustee with unlimited power of selection of the beneficiary, or beneficiaries, of his bounty, so long as it was expended for religious or charitable purposes. He did not designate a preference for any form of religion nor did he specify any institution or individual, nor class of institutions or individuals, to benefit by a distribution of the property mentioned in this paragraph of his will. Such testamentary efforts have been likened unto powers of attorney to make wills, which the law does not permit. (*Spalding v. St. Joseph's Industrial School for Boys,* 107 Ky. 382, 54 S. W. 200, 21 Ky. Law Rep. 1107.)

While we are in entire accord with the theory that a testator's will should be upheld whenever possible, we are convinced much mischief and evil would result in adopting in Idaho a doctrine which would uphold a will placing the disposal of a testator's property beyond the supervision of the courts.

Apparently, in some states, the attorney general has power to commence and maintain suits to protect public charities where property intended for their use is not being properly applied. In this state, such is not one of the duties

of that official. (I. C. A., sec. 65–1301.) Sec. 5–301 of our code provides:

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by this code."

If the sixth paragraph of this will should be upheld, and the trustee therein named should be derelict in the duty sought to be imposed upon him, we doubt that his misconduct could be brought to the attention of a court, because of the lack of a proper party plaintiff.

■ For the reasons above stated, and on authority of the cases above cited, we hold the sixth paragraph of the will invalid and void.

The will also contains a number of bequests of money to persons and institutions therein named; also a devise of a dwelling house and a bequest of the furniture, belonging to the testator, therein situated and of an automobile, to a specified beneficiary.

■ Appellants contested the will, and prayed for its revocation, on the grounds, in addition to their attack on the sixth paragraph, that Johannesson did not have testamentary capacity at the time it was executed; that his signature to the will was procured by, through and under undue influence exerted over and upon him by Bohman, the executor therein named, and that it was not executed according to law.

Appellants complain of the action of the trial judge in instructing the jury:

"Ability to transact important business or even ordinary business is not the legal standard of testamentary capacity. A person may be capable of making a good will after he or she is so far gone into imbecility and mental darkness as to be no longer capable of making a valid deed or transacting business generally. Mental perception and power to think and reason of a lesser degree than that which is required in the understanding and transaction of ordinary business may be, all that is requisite to the full understanding of everything involved in the execution of a will."

That instruction is formulated from quotations to be found in *Schwarz v. Taeger*, 44 Ida. 625, 631, 258 Pac. 1082, 1084. It contains language which should not have been included in the instruction, being likely to mislead the jury, as follows:

"A person may be capable of making a good will after he or she is so far gone into imbecility and mental darkness as to be no longer capable of making a valid deed or transacting business generally."

That language was likely to communicate to the minds of the jurors the idea that one, although almost entirely bereft of mental power and understanding, would still be able to make a valid will. The instruction also fails to distinguish between simple wills, which it would require but little mental capacity to understand, and complicated wills, an understanding of which might require profound thought and diligent study. We cannot approve the instruction.

Appellants criticize instruction number 19 and contend it is "absolutely meaningless and could serve only the purpose of confusing the jury." That is true of the instruction as copied in the transcript, but we have sent for the original and find it is not correctly copied, but a part of it has been omitted, and that the instruction, as given, is free from fault.

Appellants have assigned as error numerous rulings by the trial judge; the giving of other instructions, not herein discussed, and the refusal to give instructions requested by them. We find no prejudicial error in the record other than as above pointed out.

The judgment is reversed and the cause is remanded for further proceedings consistent with the views herein expressed. Costs are awarded to appellants, payable out of the estate.

Holden, C. J., and Givens, J., concur.

AILSHIE, J., Concurring.—I concur in the foregoing opinion and I feel constrained to make this further comment on the error contained in the instruction quoted by Justice Morgan. It is going entirely too far to tell a jury that a testator may be competent to dispose of his estate by will when at the same time he was mentally incapable of entering into a contract or disposing of any part of his property by sale or otherwise. That has apparently been sanctioned by some courts as the law but it is not sound reason and ought not to be the law anywhere. Such an instruction in effect

tells the jury that, although they find that the testator was not competent to sell livestock or produce from his farm or goods from his store, or other personal property, or convey a town lot or contract for improving it or constructing a building on it, he may be at the very same moment mentally capable of giving away his entire estate by will and that, too, to someone of no relation to him or to a total stranger. To my way of thinking, a man ought to have as much intelligence and understanding to qualify him to give away his estate by will as would be required of him to sell any portion of it for cash or on contract.

A lot of misdirected sympathy and solicitude has been wasted on the subject of the right of any person to make a will disposing of his property; and that his intention, if he was capable of having any kind of hazy intention, must be carried out. The trouble about much of that kind of discussion is that it overlooks the fact that it should be a thoughtful and deliberate intention or conclusion, in order to raise it to the status of an *animus disponendi*. In other words, the right to dispose of one's property by will has been so commonly treated as a *natural and inalienable right* of a citizen that it has come to be considered and treated as a natural and constitutional right; whereas, *in fact, it is neither*. A man has a right to make a will, simply by reason of the fact that the legislature has authorized him to do so. So also is the right to take property by descent. (If it were not for the statutes of descent and succession, and the statute authorizing execution of wills, the property of decedent would go to the state.) This proposition is fundamental and well stated in 68 C. J., pp. 414 and 415, as follows:

"In the United States, it has been said that, in the absence of legislative authority, no one may dispose of his property by will, there being no common-law right to make a will. In a majority of jurisdictions the matter is entirely statutory. The right to make a will is not a natural, inalienable, inherited, fundamental, nor inherent right, nor a right of citizenship, nor is it guaranteed by the constitution. It is said to be a privilege."

The Supreme Court of Washington in *In re Ward's Estate*, 183 Wash. 604, 49 Pac. (2d) 485, 102 A. L. R. 496, has very aptly said:

"The state's power over property passing by will or through the statutes of descent and distribution is plenary. It may take all of the estate if it sees fit, and, if it may take all, it may take any part less than all. The state's right to direct its disposition is unlimited." (Citing cases.)

(See, also, *Lewark v. Dodd,* 288 Ill. 80, 123 N. E. 260, 261; *Breadheft v. Cleveland,* 184 Ind. 130, 108 N. E. 5, 110 N. E. 662; *In re Delano's Estate,* 176 N. Y. 486, 68 N. E. 871, 872, 64 L. R. A. 279; *In re Evans' Will,* 193 Iowa, 1240, 188 N. W. 774, 775.)

Now the point I make is that when a man is exercising his statutory right to make a will, he ought to be required to know what he is about and what he is doing, just as much as he should be required to know when he is selling some part of the same property for a consideration. I make these observations at this time concerning the instruction commented on by Justice Morgan, because they are not in harmony with the spirit of the instruction that was given in this case.

I am authorized to say that Chief Justice Holden concurs in these views.

BUDGE, J., Dissenting in Part and Concurring in Part.— As will be observed from a reading of the majority opinion, paragraph 6 of the will of Johan Johannesson is held to be void upon the theory that the provisions thereof are uncertain and indefinite as to the identity of the beneficiaries as a class, and as to the time and manner of the disposition of the trust. It will be conceded, as it is in the majority opinion, that the authorities are not in harmony, and that support may be found to sustain both appellants' and respondents' contention. Upon an examination of the authorities upon both sides of the question I am of the opinion that the authorities supporting respondents' contention are the more logical and better reasoned and are thus entitled to greater weight and should be followed. It is elementary law that every intendment is indulged to prevent failure of a testator's will, and that his intentions, if ascertainable from the contents of the

will, should govern and the will upheld. A careful reading and analysis of the sixth paragraph of the will carries conviction, to my mind, that it was the intention and express desire of Johannesson that the residue of his estate should be, by his trustee, paid out for charitable or religious purposes, from time to time as his trustee should elect, negativing the payment of the residue of the estate to his heirs or for purposes other than charitable or religious. Among the authorities cited, and which forms the basis of my conclusions, is the case of *Anderson v. Bethlehem Lutheran Church of Red Oak,* 150 Wash. 301, 272 Pac. 972, and cases therein cited, which case is practically parallel to the case at bar. For additional authorities supporting the validity of the will and the correctness of the verdict of the jury and the judgment of the trial court attention is called to the cases hereinafter cited announcing the rule that where a charitable purpose is expressed, however general, the bequest shall not fail on account of the uncertainty of the subject, and that this is particularly true where the will provides for the appointment of a trustee or trustees to carry out the purpose of the will in such a manner as in his or their best judgment shall promote the objects mentioned in the will. (*Gossett v. Swinney,* 53 Fed. (2d) 772; *Saltonstall v. Sanders,* 11 Allen, 446, (93 Mass.); *Weber v. Bryant,* 161 Mass. 400, 37 N. E. 203; *Everett v. Carr,* 59 Me. 325; *Fox v. Gibbs,* 86 Me. 87, 29 Atl. 940; *Dunn v. Morse,* 109 Me. 254, 83 Atl. 795; *Stewart's Estate,* 26 Wash. 32, 66 Pac. 148, 67 Pac. 723; *In re Kimberly's Estate,* 249 Pa. 483, 95 Atl. 86; *Minot v. Baker,* 147 Mass. 348, 17 N. E. 839, 9 Am. St. 713; *Selleck v. Thompson,* 28 R. I. 350, 67 Atl. 425; *Welch v. Caldwell,* 226 Ill. 488, 80 N. E. 1014; Perry on Trusts, pp. 694, 701, 732; *National Board of Christian Women's etc. v. Fry,* 293 Mo. 399, 239 S. W. 519; *Irwin v. Swinney,* 44 Fed. (2d) 172; *Harger v. Barrett,* 319 Mo. 633, 5 S. W. (2d) 1100; *Sandusky v. Sandusky,* 261 Mo. 351, 168 S. W. 1150; *St. Louis Union Trust Co. v. Little,* 320 Mo. 1058, 10 S. W. (2d) 47; *Powell v. Hatch,* 100 Mo. 592, 14 S. W. 49; *In re Durbrow's Estate,* 245 N. Y. 469, 157 N. E. 747.)

The trial court by special interrogatory submitted the following question to the jury:

"At the time of the execution of the will herein questioned, August 23, 1934, was Johann Johannesson mentally competent to execute a will? ANSWER: Yes."

The mental competency of Johannesson to execute a will was a question of fact for determination by the jury under proper instructions. The jury unanimously found that Johannesson was mentally competent at the time he executed the will and there is an abundance of evidence in the record which supports this finding. Johannesson lived over a year thereafter and transacted business. However, my associates had unanimously reached the conclusion that the instruction set out in the majority opinion is prejudicially erroneous and likely to have misled the jury. While I am still of the opinion that the evidence is amply sufficient to support the legacies left to the various legatees, it may not be advisable to uphold the giving of the instruction referred to as it would be a precedent for future cases. I therefore concur in the conclusion reached by the majority in reversing the case, *for the reason that the instruction was erroneous,* and I also concur in the conclusion reached by Mr. Justice Ailshie in his specially concurring opinion, holding the instruction to be erroneous.