509 P.2d 1306

Charline Bales DOLAN et al., Plaintiffs
and Appellants,

v.

Louise JOHNSON et al., Involuntary
Plaintiffs,

Mary E. CHARAMUGA, Involuntary
Plaintiff and Appellant,

v.

Phil ASHFORD et al., Defendants and
Respondents.

No. 11121.

Supreme Court of Idaho.
May 14, 1973.

E. L. Miller, William A. Reagan, Coeur d'Alene, Clark Gasser, Pocatello, for appellants.

Smith, Miller & Weston, Caldwell, Hawley, Troxell, Ennis & Hawley, Boise, for respondents.

McQUADE, Justice.

This case was submitted to the district court upon a written stipulation of facts and the briefs of the parties. Appellants had filed a complaint pursuant to I.C. § 10–1204,[1] in September of 1970. There was no claim that the disputed will or the two codicils executed in relation to it were made while Ethel Whittenberger was incompetent, under undue influence, fraud or duress. Appellants contended that the residuum provisions of the Ethel Whittenberger will, involving some $1,359,000, was invalid because the language was vague and indefinite in that the beneficiaries were not designated with sufficient legal certainty.

The district court sitting without a jury, upheld the will, and the appellants have

---

1. "10–1204. *Representatives and persons beneficially interested—Right to declaration.*—Any person interested as or through an executor, administrator, trustee, guardian or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust, in the administration of a trust, or of the estate of a decedent, an infant, lunatic or insolvent, may have a declaration of rights or legal relations in respect thereto;

(a) To ascertain any class of creditors, devisees, legatees, heirs, next of kin or other; or

(b) To direct the executors, administrators or trustees to do or abstain from doing any particular·act in their fiduciary capacity; or

(c) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."

appealed from that decision. The decedent had no children and the appellants are an older brother, an older sister and six nieces, three of whom are involuntary parties. Appellants assign error to the district court's conclusion that a valid charitable trust was created under the residuum provisions of the will. Appellants allege that the district court erred in making certain findings of fact and conclusions of law since: (1) the will failed to define ascertainable beneficiaries, and (2) the testamentary disposition gave the Board of Managers an unlimited power of disposition.

The will (with codicils) after making specific bequests, devised the residue of the estate in the following language:

"All of the rest, residue and remainder of my estate of whatsoever kind and nature and wheresoever located, including all stock bonds, securities, mortgages, and any other property of which I may die seized of or possessed or in which I have an interest, I hereby leave in trust as follows:

"A. I hereby create and establish the CLAUDE R. and ETHEL B. WHITTENBERGER FOUNDATION to be managed and controlled by a board of five (5) managers.

"B. I nominate and appoint PHIL ASHFORD, Boise, Idaho; ROBERT JOHNSON, Parma, Idaho; DEAN E. MILLER, Caldwell, Idaho; and Martin C. Warberg, Caldwell, Idaho, as the original board of managers.

"C. In case of the death, resignation, inability or refusal of any manager to act, the surviving managers from time to time will appoint a new manager, who shall be a resident of the State of Idaho. Such new manager shall in all respects have the same authority as though he or she had been named as one of the original managers herein. Should the surviving managers fail to appoint a new manager within 60 days after the death, resignation, inability or refusal of any manager to act, it shall be the duty of

these managers to petition the Probate Court of Canyon County, Idaho, to make such appointment, upon such notice and other conditions as the Court may direct and such appointments shall have the same effect as if made by the surviving managers.

"D. I give, bequeath and devise to the said board of managers of the CLAUDE R. and ETHEL B. WHITTENBERGER FOUNDATION and their successors all the rest, residue and remainder of my estate as above set forth to hold in trust for religious, charitable, literary, educational and public uses or purposes as the board of managers may from time to time appoint, order or direct and as hereinafter set forth:

"E. The funds of such foundation shall be used exclusively for religious, charitable, literary, or educational purposes and no part of the net earnings shall inure to the benefit of any individual and the foundation shall not carry on any activities which shall include the carrying on of propaganda or otherwise attempting to influence legislation.

1. The managers shall use the income from such foundation to assist in charitable and educational activities for the moral, mental, intellectual and physical development of young men and women.

2. To establish or provide scholarships for deserving young men and women and to assist them in attending any educational institution in this country or abroad.

3. To assist, equip or provide for the maintenance of institutions for the advancement of learning in this country.

4. To assist, equip or provide for the maintenance of hospitals and rehabilitation centers within the State of Idaho.

5. To assist, equip or provide for the maintenance of churches and religious activities in this country.

6. In this disposition of income and principal, if need be, preference shall be given to the furtherance or carrying out

of the foregoing objects and purposes within the State of Idaho, but nothing herein contained or otherwise shall be construed as restricting the aiding of such activities anywhere else in this country.

7. The board of managers shall not be restricted in any way in their selection of the uses to which the trust fund shall be applied nor in the amount or proportion in which such application shall be made. However, the trustees shall, so far as practicable distribute all of the annual income annually. The board of managers may make, use and apply the principal therefrom, but I direct that no part of the principal be distributed except in case of great necessity and that no part of the principal be distributed without the approval of the Probate Court of Canyon County, Idaho, upon petition by the managers and order of the Court.

8. Provided further that the annual income must be distributed to not less than five (5) recipients and that no recipient shall in any one year receive more than 20% of the annual income.

"9. For the purpose of this trust, income shall be understood to include all types of stock dividends as well as cash dividends, but not meant to include such divisions of stock of any corporation which amount to a division of the capital of such corporation.

"10. Without limiting the authority of the managers, it is my desire that, so far as practicable, annual gifts be made to the College of Idaho and other educational institutions in Idaho, and as I have always been a member of the First Christian Church in Caldwell, I request that the board of managers make an annual contribution thereto.

11. In determining the recipients and amount of annual scholarships, the board of managers may establish its own standards, rules and regulations, keeping in mind that the purpose of such scholarships is to provide funds for the education of persons for the general betterment of themselves and society.

12. I recommend to the board of managers that in the event of need that the managers give consideration to my nieces and nephews or their children and the nieces and nephews or children of the nieces and nephews of Dr. Claude R. Whittenberger for scholarship or educational funds, providing that the same can be done without interfering with or impairing the tax exempt charitable status of the foundation or other provisions of my Will and this Codicil.

13. The board of managers shall file in the Probate Court of Canyon County, Idaho, annually an account of their administration of the trust.

14. In addition to the powers conferred upon them by law, the board of managers shall have the following discretionary powers with respect to the property at any time held hereunder:

a. To sell, exchange or otherwise dispose of any of the property hereunder and to invest and reinvest in any property, real, personal or otherwise as they, in their absolute discretion deem adviseable without respect to the limitations imposed by law in the investing of trust funds.

b. To employ any person, firm, corporation, bank, or company for advise with respect to investment policy and to employ accounting and fiscal services.

c. The board of managers shall be reimbursed for any expenses or time spend in the management of the trust."

 A primary rule of interpretation for testamentary writings is to ascertain and give effect to the intention of the testatrix where possible and lawful.[2] In construing a will, the presumption is against

2. White v. Conference Claimants Endowment Commission of the Idaho Annual Conference of the Methodist Church, 81 Idaho 17, 27, 336 P.2d 674 (1959); In re Heazle's Estate, 72 Idaho 307, 240 P.2d 821 (1952).

partial intestacy, particularly where the subject of the gift is the residuary estate.[3] The Court here cannot speculate as to what the testatrix intended to declare in the will, except as that intent is expressed by the words actually used therein.[4]

In order to show that the Whittenberger will did not create a valid charitable trust, appellants rely mainly on the rules set forth in the Idaho cases of Hedin v. Westdala Lutheran Church,[5] In re Eggan's Estate,[6] and Yribar v. Fitzpatrick.[7] In *Hedin* this Court held invalid a trust for "charitable or religious purposes" because the testator failed to "designate a preference for any form of religion nor did he specify any institution or individual, nor class of institutions or individuals, to benefit by a distribution of the property mentioned in this paragraph of his will."[8] The doctrine of *cy pres* was rejected as a method to correct this invalidity.[9]

■ The rule that there must be certainty in defining the class of individuals to be benefited before a charitable trust is established, as stated in *Hedin*, was reaffirmed in the *Eggan* case. *Eggan*, after discussing three reasons for the *Hedin* decision, distinguished the case on the facts. The phrase in *Eggan*, the "youth of this area," was held to be a sufficiently definite designation of the class of beneficiaries to allow the court to carry out the intention of the testator.

*Yribar* held that the "beneficiary" under Yribar's will—"some worthy, charitable or public institution or institutions"—was no more definite than the "beneficiary" in the Hedin will—"charitable or religious purposes." It was further stated that it would

be impossible for the trustees to effectuate Yribar's intent because his intent was unascertainable.[10]

The three reasons for the invalidity of the will in *Hedin*, as stated in *Eggan*,[11] were: (1) The bequest was too vague and indefinite as to the beneficiaries as a class. (2) The trustee was given the unlimited right to choose the beneficiaries. (3) There was no one named who could enforce the trusts. These reasons for invalidating the will in the *Hedin* case are not applicable here.

■ The purpose of the requirement for a definite designation of the class of the beneficiaries is to allow the courts to be certain that the testatrix's intendments and purposes are being carried out.[12] In designating the beneficiaries of her charitable trust, Mrs. Whittenberger states in paragraph D of the Third Article that she gives the residue of her estate to be held in trust "for religious, charitable, literary, educational and public uses or purposes * * * *as hereinafter set forth*: * * *." (Emphasis added). If this were the only indication of Mrs. Whittenberger's intentions, then the trust might well be invalid due to a failure to adequately designate a beneficiary. However, the words "as hereinafter set forth," refer to the detailed designations set forth in paragraph E of the Third Article. Paragraph E states in part that the income shall be used:

"1. * * * [T]o assist in charitable and educational activities for the moral, mental, intellectual and physical development of young men and women.

2. To establish or provide scholarships for deserving young men and women and

---

3. In re Hartwig's Estate, 70 Idaho 77, 82, 211 P.2d 399 (1949).

4. In re Corwin's Estate, 86 Idaho 1, 6, 383 P.2d 339 (1963).

5. 59 Idaho 241, 81 P.2d 741 (1938).

6. 86 Idaho 328, 386 P.2d 563 (1963).

7. 91 Idaho 105, 416 P.2d 164 (1966).

8. *Supra*, note 5, 59 Idaho at 250, 81 P.2d at 745.

9. *Id.*, 59 Idaho at 244, 81 P.2d 741.

10. *Supra*, note 7, 91 Idaho at 108, 416 P.2d 164.

11. *Supra*, note 6, 86 Idaho at 338–339, 386 P.2d 563.

12. *Id.*, 86 Idaho at 340, 386 P.2d 563; see also, Yribar v. Fitzpatrick, *supra* note 7.

to assist them in attending any educational institution in this country or abroad.

3. To assist, equip or provide for the maintenance of institutions for the advancement of learning in this country.

4. To assist, equip or provide for the maintenance of hospitals and rehabilitation centers within the State of Idaho.

5. To assist, equip or provide for the maintenance of churches and religious activities within this country."

These purposes are sufficiently definite to overcome the first reason relating to adequate designation of beneficiary that was used to invalidate the will in *Hedin*.

The second reason for invalidating the *Hedin* will was the unlimited right in the trustees to choose beneficiaries. The trustees here are limited by the purposes set forth by Mrs. Whittenberger in the Third Article. Any distribution of income or principal would be limited to the classes of beneficiaries set forth in the will.

■ The third reason for holding the will in *Hedin* invalid was that there was no one who could enforce the trust. Since there are ascertainable classes of beneficiaries here, there are parties who could

enforce the trust. Under the provisions of I.R.C.P. 23(a) [13] actions by one or more members of a class are authorized. Also, since the *Hedin* decision, Idaho has enacted I.C. § 67–1401,[14] which allows the attorney general to enforce charitable trusts. Thus, the attorney general now has supervisory powers over charitable trusts to ensure that such trusts are executed according to the settlor's intent.

The purposes set forth in the Whittenberger will are charitable purposes. The nature of charitable purposes is set forth in § 368 of the Restatement of the Law of Trusts (2d) as follows:

"Charitable purposes include

(a) the relief of poverty;

(b) the advancement of education;

(c) the advancement of religion;

(d) the promotion of health;

(e) governmental or municipal purposes;

(f) other purposes the accomplishment of which is beneficial to the community."

Paragraph E of the Third Article and the Whittenberger will as a whole clearly show that the testatrix intended to establish a charitable trust for purposes which come

---

13. I.R.C.P. 23(a) states: "In actions wherein persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;

(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

14. I.C. § 67–1401 reads in pertinent part: "It is the duty of the attorney general:

* * * 4. To supervise nonprofit corporations, corporations, charitable or benevolent societies, person or persons holding property subject to any public or charitable trust and to enforce whenever necessary any noncompliance or departure from the general purpose of such trust, in order to accomplish such purpose, said nonprofit corporations, corporations, charitable or benevolent societies, person or persons holding property subject to any public or charitable trust are subject at all times to examination by the attorney-general, on behalf of the state, to ascertain the condition of its affairs and to what extent, if at all, said trustee or trustees may have failed to comply with trusts said trustee or trustees have assumed or may have departed from the general purpose for which it was formed. In case of any such failure or departure, the attorney-general shall institute, in the name of the state, any proceeding necessary to enforce compliance with the terms of the trust or any departure therefrom."

within the above definition of charitable purposes.

The intention of Mrs. Whittenberger to establish a charitable trust is clear. The provisions of the will fulfilled the requirement of definite designation of the classes of beneficiaries. The judgment and decree of the trial court is affirmed.

Costs to respondents.

DONALDSON, C. J., and SHEPARD, McFADDEN, and BAKES, JJ., concur.