(June 30, 1917.)

THE AVERILL MACHINERY COMPANY, a Corporation, THE GARDEN CITY FEEDER COMPANY, a Corporation, and JOHN W. SOMMERVILLE, as Executor of the Last Will and Testament of J. H. SOMMERVILLE, Deceased, Respondents, v. THE VOLLMER–CLEARWATER COMPANY, LTD., a Corporation, Appellant.

[166 Pac. 253.]

CHATTEL MORTGAGE—CONVERSION—DAMAGES.

1. Evidence examined and found sufficient to sustain the findings of the lower court to the effect that the chattel mortgages in ques-

On loss of profits as element of damages for conversion of personal property, see note in 52 L. R. A. 51.

tion were valid and subsisting liens upon the crop of barley, and that appellant wrongfully and unlawfully converted a portion of the same to its own use.

2. In an action for damages for the conversion of personal property, the rule of damages to be applied in the absence of special circumstances is the market value of the property at the time of conversion, plus interest.

[As to measure of damages in actions of trover, see notes in 24 Am. Dec. 70; 54 Am. Rep. 421.]

APPEAL from the District Court of the Second Judicial District, for Lewis County.   Hon. Edgar C. Steele, Judge.

Action to foreclose chattel mortgages.   Judgment for cross-plaintiffs.   *Modified and affirmed.*

G. W. Tannahill, for Appellant.

There is the strongest kind of evidence that C. W. Rounds was the owner of the grain, and if so, F. W. Rounds had no right to mortgage it or attempt to do so, and any mortgage he might execute would be void.   He could only mortgage such interest as he might have in the property.   (*Bradley Land & Lbr. Co. v. Eastern Mfg. Co.*, 104 Me. 203, 71 Atl. 710; *Benjamin Schwarz & Sons v. Kennedy*, 142 Fed. 1027; *Morris v. Brown*, 177 Ala. 389, 58 So. 910; *Smith v. J. I. Case Threshing Mach. Co.*, 50 Pa. Super. Ct. 92; *Roper Wholesale Grocery Co. v. Faver*, 8 Ga. App. 178, 68 S. E. 883.)

The value which property has at the time of the conversion, whether market or actual, is the basis of damages in trover.   The rule is not affected by either an increase or a decrease in its value subsequent to the conversion of it. (*Hepburn v. Sewell*, 5 Har. & J. (Md.) 211, 9 Am. Dec. 512; *Bates v. Stansell*, 19 Mich. 91; *Carter v. Feland*, 17 Mo. 383; *Hendricks v. Evans*, 46 Mo. App. 313; *Burney v. Pledger*, 3 Rich. L. (S. C.) 191; 13 Cyc. 170.)

Where personal property is taken possession of without authority of law and is retained and converted to the use of the person taking such possession in trover by the owner, the plaintiff is entitled to recover, as a general rule, the market

value of such property at the time it was taken. (*Unfried v. Libert*, 20 Ida. 708, 119 Pac. 885; *Bates v. Nyberg Automobile Works*, 170 Ill. App. 301; *Hautala v. Dover*, 176 Mich. 366, 142 N. W. 579; *Whittler v. Sharp*, 43 Utah, 419, 135 Pac. 112, 49 L. R. A., N. S., 931; *Hassam v. J. E. Safford Lumber Co.*, 82 Vt. 444, 74 Atl. 197; *Hart v. Brierley*, 189 Mass. 598, 76 N. E. 286.)

G. Orr McMinimy, for Respondents.

If the property converted was of fluctuating value, the owner may recover, according to some authorities, the highest market value within a reasonable time after conversion; according to others, the highest value attained between the time of conversion and the bringing of the action, with interest; but by the weight of authority, the highest value between conversion and the day of trial. (*Lee v. Mathews*, 10 Ala. 682, 44 Am. Dec. 498; 38 Cyc. 2096; *Sharpe v. Barney*, 114 Ala. 361, 21 So. 490; *Fromm v. Sierra Nevada S. Min. Co.*, 61 Cal. 629; *Barrante v. Garratt*, 50 Cal. 112; *Lynch v. McGhan*, 7 Cal. App. 132, 93 Pac. 1044; *Straw v. Jenks*, 6 Dak. 414, 43 N. W. 941; *Robinson Mining Co. v. Riepe*, 37 Nev. 27, 138 Pac. 910; *Thompson v. Carter*, 6 Ga. App. 604, 65 S. E. 599.)

RICE, J.—During the year 1913, one F. W. Rounds was the owner of Lots 3 and 4 and the E. ½ SW. ¼ of Sec. 7, Tp. 34 N. of R. 1 W., B. M. On the 15th day of May, 1913, F. W. Rounds gave a chattel mortgage to John W. Sommerville, as executor of the last will and testament of J. H. Sommerville, deceased, on an undivided one-half of all the crop of grain of any kind or character growing or to be grown during the season of 1913 upon the said land. On the 8th day of August of the same year, F. W. Rounds and wife executed a chattel mortgage to the Averill Machinery Company, a corporation, on an undivided one-half of the crop of barley then growing on the said real estate, and on the last-mentioned date he and his wife executed another chattel mortgage to the Garden City Feeder Company, a corporation, on an undivided

one-half of the crop of barley then growing on the said real estate.

It appears that during the year 1913 the only crop of grain raised on the said real estate was barley. This action was originally instituted by one W. E. Chapman for the purpose of foreclosing a labor lien upon the crop of barley, and it appears that Chapman prosecuted his action to a judgment and enough of the barley was sold to satisfy his claim. John W. Sommerville, as executor, the Averill Machinery Company and the Garden City Feeder Company joined in a cross-complaint in said action for the purpose of foreclosing their chattel mortgages, and to secure judgment against the Vollmer-Clearwater Company for the value of the barley not sold to satisfy the claim of Chapman which they alleged had been converted by the last-mentioned corporation. The Vollmer-Clearwater Company answered, denying that the mortgages above mentioned covered any grain stored in their warehouse, except ninety sacks, and denying conversion of any grain to their own use.

The Vollmer-Clearwater Company claim that in the spring of 1913 F. W. Rounds made an agreement with his son, C. W. Rounds, whereby in consideration for his work and labor in planting and caring for the crop the said C. W. Rounds would be given an undivided one-half interest in the crop raised on the summer-fallowed portion of the above-described land, which would be about one-half thereof; that when the grain was delivered, warehouse receipts were issued to C. W. Rounds for his half of the barley raised on the summer-fallowed land; that the company purchased the C. W. Rounds grain and applied the proceeds to the payment of certain indebtedness due the company from F. W. Rounds, C. W. Rounds and R. M. Rounds, a brother of C. W. Rounds, and that the mortgages above mentioned did not cover the interest of C. W. Rounds in said crop.

The only evidence introduced by the Vollmer-Clearwater Company in support of their claim of ownership in C. W. Rounds is contained in the following testimony of R. M. Rounds, a son of F. W. Rounds and brother of C. W. Rounds:

"Q. Did you hear any arrangement or agreement or understanding between your father and C. W. Rounds relative to this Sommerville land?

"A. I recollect that my father and C. W. and myself was at the place, and that they were talking about an agreement for an undivided half of the crop.

"Q. On the summer-fallow land?

"A. Land they were working together.

"Q. How much was your father to receive out of it?

"A. One-half.

"Q. And how much was C. W. Rounds to receive?

"A. One-half."

It does not appear when this alleged conversation took place. It will be noted that the alleged agreement was not confined to summer-fallowed land, but to all the land F. W. Rounds was working. For anything that appears in the evidence the agreement may have been made after the mortgages were given. Witness George Emick testified that he lived on the Rounds land that season; that he prepared the land for seeding and did a portion of the seeding, and that so far as he knew C. W. Rounds did not do any work on the grain at all. We do not think the testimony of R. M. Rounds would sustain a finding of ownership of any part of the grain in C. W. Rounds.

Upon the entire evidence the court was amply justified in finding that the mortgages above mentioned were valid and subsisting liens upon the crop of barley, and that the Vollmer-Clearwater Company wrongfully and unlawfully took and converted to their own use a portion of the crop.

Appellant also contends that the three chattel mortgages above mentioned refer to the same undivided half of the grain, and that it was the intention of the mortgagor to leave an undivided half of the crop unencumbered. This contention cannot be sustained. In terms each mortgage covers an undivided half of the whole crop, and it is impossible to designate a particular undivided interest as distinguished from another undivided interest in the same property. Each mortgage covered an undivided half interest in the entire crop,

and the question of priority is determined by the date of execution and record.

It cannot be determined from the evidence how the trial court arrived at the fact that 616 sacks of barley were converted. According to the evidence there were 540 sacks converted by the Vollmer-Clearwater Company, with ninety sacks still remaining in its warehouse to be delivered to the persons entitled thereto. The 540 sacks converted weighed 63,331 lbs., leaving 10,684 lbs. still in the company's warehouse.

There remains only to consider the proper measure of damages to be applied for the conversion of the grain. The court found that at the time of conversion the value of the grain was $1 per cwt., and that the highest market value of the said grain between the time of conversion and the time of trial was $1.55 per cwt. The admission of evidence as to the highest market value of grain between the date of conversion and the date of trial is specified by appellant as error.

Sutherland on Damages, 4th ed., section 1109, says: "The general rule of damages in England and in this country is the market value of the property at the time and place of conversion if it had such value; and in America, at least, interest is generally added as a matter of law. This rule is based on the assumption that such value is beneficially equal to the property itself, and that interest compensates for the delay in payment of that value and the value of the use of the property."

In 8 R. C. L., at p. 537, the author of the text states: "The right of interest, as a part of the damages, in actions of trover and trespass *de bonis asportatis,* was given first in England by Stat. 3 & 4 Wm. IV; and this right has been, in general, recognized in this country, not so much on the theory that interest as such is due, but rather that the plaintiff is entitled to the fixed sum of money or definite money value of property converted, and the jury may give as damages an amount equal to interest on such value."

The rule of damages quoted from Sutherland is the correct rule to apply to this case. (*Continental Divide Min. Inv. Co. v. Bliley,* 23 Colo. 160, 46 Pac. 633; *Unfried v. Libert,* 20 Ida.

708, at 729, 119 Pac. 885; *Unfried v. Libert,* 23 Ida. 603, 131 Pac. 660; *Sears v. Lydon,* 5 Ida. 358, 49 Pac. 122; *Cowden v. Finney,* 9 Ida. 619, 75 Pac. 765; *Cowden v. Mills,* 9 Ida. 626, 75 Pac. 766; *Hart v. Brierley,* 189 Mass. 598, 76 N. E 286; *Mechanics' etc. Bank v. Farmers' etc. Bank,* 60 N. Y. 40; *Simpson v. Alexander,* 35 Kan. 225, 11 Pac. 171; *Hofreiter v. Schwabland,* 72 Wash. 314, 130 Pac. 364.)

The rule of the highest intermediate value contended for by respondents seems to have been limited to those cases of conversion where the property was of fluctuating value. The rule seems to have arisen out of conversion and detention of stocks, and to have been applied to such transactions. We do not find that this rule has been applied as a measure of damages for conversion of personal property such as was converted in the case at bar.

The trial court failed to find the date of conversion. This is necessary in order to fix the time from which interest is to be computed.

This cause is remanded to the trial court with instructions to determine the date of conversion and to modify the findings of fact and conclusions of law so as to give the cross-plaintiffs judgment for the amount of grain converted at the market price of such grain at the time and place of conversion, with interest thereon to the date of entering the judgment, and to enter a decree of foreclosure against the ninety sacks remaining in the possession of the Vollmer-Clearwater Company. No costs awarded on this appeal.

Budge, C. J., and Morgan, J., concur.