(No. 23209.—

ANNA PASSENHEIM *et al.* Appellants, *vs.* HANS REINERT *et al.* Appellees.

*Opinion filed February 14, 1936—Rehearing denied April 10, 1936.*

JOSEPH A. WEBER, for appellants.

C. E. TRIPP, and G. A. TOFT, for appellees.

Mr. JUSTICE HERRICK delivered the opinion of the court:

Augusta Reinert; on February 11, 1932, being then a widow 77 years old, executed an instrument purporting to be her last will. She died February 13, 1933, leaving no children nor descendants but left as her heirs-at-law, a sister, a brother and certain nephews and nieces, all of the next of kin being of the half-blood. The instrument was admitted to record as her will in the probate court of Cook county on May 19, 1933. By it she expressed a desire that a fitting funeral and burial be provided by her executor, that her just debts, funeral expenses and the costs of administration be paid, bequeathing the rest of her property to her step-son, Hans Reinert, and appointing John J. Klupar as her executor.

The next of kin of the deceased brought suit to contest the will, charging mental incapacity of the testatrix and undue influence on the part of Hans Reinert. The cause was tried before a jury, resulting in a verdict sustain-

ing the will. The decree followed such finding and dismissed the complaint for want of equity. The contestants have appealed, and here urge that the verdict is contrary to the weight of the evidence.

The property of the decedent consisted of some jewelry, the value of which is not shown, a $2500 and a $1000 first mortgage real estate bond and a one-third interest in the home where she lived. The $2500 bond and the interest in the real estate came to her from the estate of Hans' father.

The testimony showed that about the time of the execution of the will testatrix was troubled with deafness and rheumatism, was weak physically, had an ulcer on one foot which was kept bandaged a considerable portion of the time and had other physical infirmities, incident to her advanced years. The effect, if any, her physical condition had upon her mental condition is a controversial, factual issue in the case.

During the course of the trial Hans Reinert and the executor were called by the contestants and examined pursuant to the provisions of section 60 of the new Civil Practice act. (Ill. State Bar Stat. 1935, chap. 110, par. 188, p. 2446.) The testimony of Hans Reinert was to the effect that his father and the testatrix were married November 18, 1924. The father died in 1931, leaving seven children by a former marriage, but none by the marriage with the testatrix. In the latter years of his father's life Hans looked after his father's business. After his father's death Hans visited his step-mother two or three times a week, did errands for her, collected and paid over to her the rent from the tenant of the second story of the flat where she lived. She talked with Hans about making a will. He told her if she made a will, to will her property to whomsoever she pleased. She requested him to have Mr. Klupar come over to the house to make her will. Klupar was engaged in the real estate business in that part of the city and was

the then administrator, with the will annexed, of the estate of the deceased husband of the testatrix. The testatrix understood English only to a limited extent, spoke it brokenly and customarily conversed in German. Hans Reinert and Klupar each spoke German. After receiving the message to call on Mrs. Reinert Klupar about five days later, in the evening, went to Mrs. Reinert's home accompanied by Hans and his wife.

Klupar testified the testatrix told him to draw her will; that she wished to bequeath all her property to Hans Reinert. Klupar asked her whether she wanted to have her own witnesses or whether he should bring witnesses. She instructed him to bring witnesses. Klupar drew the will at his home, returned a day or two later in the evening accompanied by two young ladies from his office. On the way to the testatrix's home he stopped at Hans' home and took him and his wife along. Klupar testified that after arriving at the home of the testatrix he explained the will to her in German; told her it first provided for the payment of all her just debts and funeral expenses and after that bequeathed everything to her step-son, Hans Reinert; that he did not read the will to her as it was written in English which she did not understand well; that after explaining the will to her he asked her to sign if it was satisfactory, which she did; that he introduced the young ladies to her and asked her if she wanted them to sign as witnesses, to which she assented.

Esther Meyers, one of the subscribing witnesses, was called by the contestants. She testified that Hans Reinert asked her to sign, but on cross-examination admitted she was mistaken and that the testatrix was the person who asked her to sign as a witness.

The decedent's physician, Dr. Zimmerman, testified for the contestants that he treated her four times in 1931; that he next saw her in November, 1932, and made a physical examination of her; her mental condition was feeble at

that time, and had grown progressively worse since 1931; that she was suffering from senility and degeneration of her mental processes and at times was not able to comprehend and answer intelligently. On cross-examination he stated she recognized him in November, 1932, on the occasion when he visited her professionally and paid him three dollars for his services.

Three other witnesses for the contestants testified to circumstances tending to show lack of testamentary capacity. Two of them further testified she made arrangements with them by which they took care of her rooms and did errands for which she personally paid weekly. She had one of them go to the place where the interest was payable on the $1000 bond every six months, collect the interest for her and paid him fifty cents for each trip. She also told this witness what property she owned and that she would pay him more for his work after she got her money from her husband's then unsettled estate.

The proponents put in evidence the certificate of oath of the subscribing witnesses and also called Irene Foley, the other attesting witness, who testified that Mr. Klupar brought the will to the home in a brief case; that the witness understood German; that he told the testatrix he had brought the will and made it out as she requested; that Klupar and Mrs. Reinert conversed in German and that they were at the home about twenty minutes. She also stated that in her opinion the testatrix was of sound mind. Six other witnesses well acquainted with the testatrix and who saw her often during the period under investigation, testified she was of sound mind and memory.

It is earnestly urged the evidence established a fiduciary relationship, that the will was made by reason of the activities of Hans Reinert and that undue influence was thereby established *prima facie*. Granting that a fiduciary relationship was established, no presumption of undue influence was thereby raised from that fact alone. (*Teter* v.

*Spooner,* 305 Ill. 198.) The undue influence which will void a will must be such as to deprive a testatrix of free agency. (*Brownlie* v. *Brownlie,* 357 Ill. 117.) The influence which will invalidate a will must be directly connected with the execution of the instrument and be operating when the will is made, thereby preventing the testatrix from exercising her own wish and will in the disposition of her estate. (*Flanigon* v. *Smith,* 337 Ill. 572; *Goff* v. *Gerhart,* 316 id. 513; *Chaney* v. *Baker,* 304 id. 362.) The fact that the beneficiaries of a will are those by whom the testatrix is surrounded and with whom she stood in confidential relationship at the time of the execution of her will, is no ground for inferring undue influence. Appellants state the law to be, that where the principal devisee is the dominant party in a fiduciary relationship with the testatrix and procures the will to be drawn, undue influence is presumed, and cite *Weston* v. *Teufel,* 213 Ill. 291, and *Gum* v. *Reep,* 275 id. 503, in support of this contention. We are in accord with the principle but such legal presumption may be overcome by competent evidence. *Brownlie* v. *Brownlie, supra; Michael* v. *Marshall,* 201 Ill. 70; *Rutherford* v. *Morris,* 77 id. 397.

The testimony shows the decedent during the last years of her life had little contact with any of her relatives. The testimony of Margaret Youngwirth, an apparently disinterested witness, was to the effect that in June, 1932, the decedent stated she would give everything to her son Hans because of his kindness to her. Mrs. Lena Frank, another disinterested witness, testified that the decedent told her on numerous occasions that Hans Reinert was her favorite step-son and in the latter part of 1932 said she had made a will and given him all her property. Netta Frank, a daughter of the last named witness, testified the testatrix told her Hans was taking good care of her and she had already made a will giving him her property because he was good to her. These several statements, freely and vol-

untarily made out of the presence of Hans Reinert, tended to show a lack of any undue influence having been practiced upon her by the beneficiary in the procurement of the will. Such statements were competent to rebut the charge of undue influence. *Belz* v. *Piepenbrink,* 318 Ill. 528.

If we assume the facts were sufficient to establish a presumption of undue influence on the part of the beneficiary, on which subject we express no opinion, it was a rebuttable presumption and was a question of fact for the jury to decide under proper instructions. The issue of undue influence was submitted to the jury on instructions for the contestants fully as strong as warranted by the law, and no complaint is made by the contestants that the jury were not fully and fairly instructed on that subject.

The verdict of a jury in a statutory will contest is to be given the same weight and credit by a reviewing court as a verdict in a suit at law and will not be disturbed unless manifestly contrary to the weight of the evidence. (*Oliver* v. *Oliver,* 340 Ill. 445; *Maher* v. *Maher,* 338 id. 102; *Voodry* v. *University of Illinois,* 251 id. 48.) We would not be warranted in disturbing the jury's verdict upon either issue.

Complaint is made by the contestants of the trial court's ruling permitting witnesses for the proponents to express an opinion, in substance, that the testatrix was of sound mind and memory. Each of these lay witnesses related the occasions when she saw the testatrix, conversations with her and the opportunity she had for observing testatrix, and gave in detail the particular facts and circumstances on which she based her judgment. A proper foundation was laid for the admission in evidence of the opinion of these several witnesses and there was no abuse of discretion on the part of the trial court in permitting the witnesses to express an opinion. *Down* v. *Comstock,* 318 Ill. 445; *Speirer* v. *Curtis,* 312 id. 152; *Brainard* v. *Brainard,* 259 id. 613; *Graham* v. *Deuterman,* 244 id. 124.

· Error is claimed in the giving of the first instruction for the proponents. The first sentence of the instruction is as follows: "The court instructs the jury that every person is presumed to be sane and to have sufficient mental capacity to make a will." It is urged that this sentence in the instruction constituted reversible error and that it was so held in *Donovan* v. *St. Joseph's Home,* 295 Ill. 125. The vice for which the instruction was there condemned was that after stating the rule as to the presumption of sanity, as above, the concluding paragraph of the instruction told the jury that this presumption imposed upon the contestants the burden of establishing, by the greater weight of the evidence, that the person seeking to make the will was not at the time possessed of sufficient mind to make a valid will. The instruction there ignored the duty of the proponents, under the rule of law as it then existed, to establish the will *prima facie.* There is no such statement in the instruction under consideration. The instruction here merely told the jury that this presumption of sanity was to be taken into account by them with the evidence in the case in determining the issue as to whether the testatrix had sufficient mental capacity to make the will. The instruction as given did not constitute reversible error. *Maher* v. *Maher, supra.*

Lastly, it is urged that it was error for the proponents not to call both of the subscribing witnesses to the will. *Thompson* v. *Owen,* 174 Ill. 229, is cited. The proceeding there was not a statutory contest, but was one seeking the probate of a will. The complaint here did not charge the will was not executed in accordance with the statute. In that situation of the record it was not necessary that the proponents produce either of the subscribing witnesses. *Egan* v. *Moellenbrock,* 322 Ill. 426.

We find no reversible error in the record and the decree is affirmed.

*Decree affirmed.*