233 P.2d 415

**BLACK v. DARRAH.**

No. 7670.

Supreme Court of Idaho.

June 27, 1951.

Cox, Ware & Stellmon, Lewiston, for appellant.

Durham & Blake, Lewiston, for respondent.

PORTER, Justice.

This is an action by respondent to recover damages against appellant for the alleged conversion and sale of an undivided one-half interest in a crop of White Dutch clover seed. The parties are farmers residing in Nez Perce County. Appellant is a grower of White Dutch clover seed and respondent, in addition to his farming, does custom harvesting.

In the summer of 1948, appellant had a growing crop of 115 acres of White Dutch clover seed. Fifty-five acres of this crop were growing on one of appellant's farms and this part of the crop was poor. On July 24, 1948, appellant contracted his entire crop of clover seed to Edward L. Oakes Company of Caldwell, Idaho, at the agreed price of 45 cents per pound.

In August, 1948, appellant called at the home of respondent. Respondent was absent. Appellant inquired of respondent's wife as to whether respondent would be interested in harvesting the fifty-five acres of clover seed. Later in August, appellant and respondent met in Lewiston and entered into an agreement whereby respondent was employed to harvest the fifty-five acres of clover seed. In September, respondent harvested the clover seed crop, hauled it to Lenore and stored it in the Gifford-Summitt Warehouse. He stored the seed under the name of "Black & Darrah" and advised Mr. Summers, the manager of the warehouse, to deliver to Mr. Darrah one-half of such clover seed whenever Mr. Darrah should call for it. The seed was in the dirt, had to be cleaned and was subject to dockage. Respondent did not see appellant again after the meeting in Lewiston until after the crop was harvested. He did not advise appellant as to the amount of such clover seed crop or as to where it was stored.

In the meantime, an agent of Edward L. Oakes Company had made arrangements with the warehouse to receive the seed grown by appellant. On October 5, 1948, the agent of the Oakes Company called on appellant to settle for the clover seed. Appellant did not know how much clover seed there was and requested the agent to get the ticket from the warehouse. Upon production of such ticket, appellant settled with the Oakes Company and received a check for the sale price of all such clover seed, computed under the terms of his contract, such check being in the sum of $1,328.83. Thereupon the clover seed was shipped from the warehouse to the Oakes Company.

About December 1, respondent called at the warehouse with respect to such clover seed and there first learned it had been sold. He then called upon appellant for settlement. In the meantime, the price of clover seed had gone up to 70 cents per pound. Appellant offered respondent one-half the proceeds of the sale of the clover seed in the sum of $664.42. Respondent demanded payment for one-half the clover seed at the rate of 70 cents per pound. No settlement was reached. Respondent then brought this action.

Respondent alleged in his complaint that he was the owner of an undivided one-half of such crop of clover seed and appellant had wrongfully converted and sold the same; that there were 3,175 lbs. of clover seed of the reasonable value of 70 cents per pound; and prayed judgment for $1,033.46. Appellant answered and affirmatively alleged that respondent agreed to harvest said crop of clover seed for one-half the proceeds of the contracted price therefor and tendered into court for respondent the sum of $664.42, being one-half the net proceeds received from the sale of the clover crop.

At the trial, respondent testified concerning the conversation held with appellant in Lewiston in August, 1948, as follows:

"A. So I met him on the street down here, and I says: 'Say, what about that clover deal you were telling my wife about?' And he says: 'Let's go in here and have a glass of beer and we will talk it over.' So we dropped in one of the beer parlors down there and we were sitting there talking about it, and he told me, he says: 'If you want to go up there and harvest that for half, why, go ahead.' And we talked about it there, and finally I asked him, I says: 'What's the matter with it?' And he says: 'No seed'. So I told him 'Well, now, I'm not going to lose my money harvesting for somebody else. If I lose any money with my own machine it's going to be on my own land.' I said: 'Now the way the year is, it's wet. You've got to know quite a ways ahead. When I put in a machine I want the right to pull out whenever I figure I'm not making wages and getting by.' And he says: 'That's fine and dandy. You can go in there and patch it out or cut it all any time you want to, and

any time you want to you can pull out.' So I went in there and harvested the crop.

"Q. At that particular conversation was anyone else present besides you and Mr. Darrah? A. No.

"Q. Now, did you have any more conversations with Mr. Darrah between that time and the time you harvested the crop? A. No.

"Q. Did you know the place he was staying at? A. Yes, he said the Wickland Place.

"Q. Did you go ahead then and harvest that crop? A. Yes, He says: 'You go up there and look it over' and he says 'Go ahead if you figure you can do it.' And so I went out and looked it over and I pulled in there and harvested it.

"Q. During that conversation you had in Lewiston in August was there anything said to you by Mr. Darrah that he had contracted to sell the White Dutch clover seed that he was going to grow to the Edward L. Oakes Seed Company? A. No.

"Q. You are quite certain that nothing was said about the seed being contracted? A. Absolutely no."

Appellant testified concerning the conversation with respondent in Lewiston as follows:

"Q. Just tell the jury the conversation as you recall it. A. One of my neighbors told me that Mr. Black was through harvesting all but a small piece of clover he had, and I was rather anxious to finish up, and I went down to Mr. Black's place, and he wasn't home; and I spoke to Mrs. Black but of course she didn't know anything about his business or what he was doing about harvesting, but she said she would tell him. Later I met Mr. Black in Lewiston at what was—in front of the Attie's Tavern at that time, on the street; and he asked me about it, and I suggested we go inside and talk about it; and we went in and had a glass of beer. And he said: 'What's the deal on this?' And I said: 'I'll give you half of what I have in the crop.' And he said: 'That sounds fair enough to me,' and that he would try it. And that was the last of the conversation.

"Q. Was there anything said, as you recall, about settling it fifty-fifty? Were those the words used? A. Yes, those words were used,—half.

"Q. Now, you said you would give him half of what you had in the crop, or half the proceeds, or half the crop? A. That crop at that time did not belong to me.

"Q. Now, we have to get this so the jury will have it straight. Just what did you mean? One-half of what you had in the crop or one-half of what you would get from the crop? A. One-half of what I would get from the crop.

"Q. That was your understanding? A. That was my understanding.

"Q. And your arrangement with Mr. Black. A. Yes.

"Q. In other words, your understanding was that you would split the proceeds fifty-fifty. A. I would split the proceeds, yes."

Appellant further testified that about August 1, he told respondent at Reubens he had contracted his clover crop for 45 cents per pound. Respondent denied this on rebuttal.

At the close of respondent's case, appellant moved for a nonsuit which motion was by the court denied. Appellant renewed his motion for nonsuit at the close of all the testimony and the motion was again denied. The jury brought in a verdict in favor of respondent in the sum of $1,033.46. Judgment was entered in accordance with the verdict and appellant has appealed from such judgment to this court. Appellant duly filed motion for new trial and also has appealed from the order of the trial court denying such motion.

By his first assignment of error, appellant urges the verdict and judgment are contrary to the law and against the evidence. He urges there was no evidence to show respondent had legal title to the personal property alleged to have been converted or the right to the possession thereof, and that at the time of the alleged conversion, the legal title and the actual, rightful possession of the seed were in Edward L. Oakes Company.

The Seed Purchase Agreement between appellant and Edward L. Oakes Company was an executory contract of sale and did not pass title to the clover seed. Bertleson v. Van Deusen Brothers Co., 37 Idaho 199, 217 P. 983. Such agreement provided for the delivery of the seed F.O.B., Lenore, Idaho, and contained, among others, the following provisions:

"Price to be $45.00 per 100 pounds basis number one recleaned, free from noxious weeds according to Idaho Law. Purity to be 99% or better, germination 95% or better.

"If seed fails to meet these specifications, buyer will accept it at appropriate discounts mutually agreeable to buyer and seller. If buyer and seller cannot agree on discounts for seed failing to meet these specifications, seller is to return any advances that have been made by buyer, and agreement is to be cancelled."

The settlement sheet, Defendant's Exhibit 1, shows that the seed was paid for on the basis of $43.20 per 100 lbs. for 3076 lbs., representing a dockage or discount of $1.80 per 100 lbs., and an unexplained deduction of 99 lbs., from the undisputed 3175 lbs. of cleaned seed. Until the requirements contained in the Seed Purchase Agreement were complied with by the seller, or the discounts agreed upon, title to the seed would not pass to the buyer. Portland Seed Co. v. Clark, 35 Idaho 44, 204 P. 146. If respondent was entitled to receive one-half of the seed under the contract between appellant and respondent, respondent's title thereto and right to possession thereof became complete when the seed

was harvested and hauled to the warehouse. Thereafter, appellant had no title to respondent's one-half of the seed to transfer to Edward L. Oakes Company in pursuance of his contract.

Appellant further contends the evidence does not disclose any act of conversion on the part of appellant, and shows that if anyone converted respondent's seed, it was the warehouseman. Appellant's action in having the agent of Edward L. Oakes Company get the weight ticket from the warehouse, and his acceptance of the contract purchase price for all the clover seed constituted an act of conversion. Whether the warehouseman also would be liable for conversion is not before us.

By Assignment of Error No. 2, appellant contends the court erred in refusing to grant appellant's motion for nonsuit because the evidence shows without contradiction the legal title to the clover seed, on October 5, 1948, was in the Edward L. Oakes Company. Accepting the evidence of respondent as true, which we must do in considering a motion for nonsuit, the evidence shows the legal title to an undivided one-half of the clover seed, on October 5, was in respondent and not in the Edward L. Oakes Company.

By Assignment of Error No. 3, appellant contends the court erred in entering judgment for interest on the sum mentioned in the verdict because there is no prayer for interest contained in the complaint. Where no answer is filed, the relief granted to the plaintiff cannot exceed that which he has demanded in his complaint; but in any other case the court may grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issues whether such relief be prayed for or not. Section 10-704, I. C.; Burke Land Etc., Co. v. Wells Fargo & Co., 7 Idaho 42, 60 P. 87; Dover Lumber Co. v. Case, 31 Idaho 276, 170 P. 108. Respondent was entitled to interest as a matter of law on the net value of the converted seed as found by the jury, from October 5, 1948, the date of conversion, to the date of judgment. Averill Machinery Co. v. Vollmer-Clearwater Co., 30 Idaho 587, 166 P. 253; Unfried v. Libert, 23 Idaho 603, 131 P. 660; Gunnell v. Largilliere Co., 46 Idaho 551, 269 P. 412. Appellant was not prejudiced in any substantial right by the failure of the court to instruct the jury to add interest if they found for respondent, and in place thereof, allowing interest in the judgment.

By Assignment of Error No. 4, appellant contends the trial court erred in denying appellant's motion for new trial. The alleged errors claimed in the motion for new trial are substantially the same as those now urged on the appeal from the judgment, and need not be separately discussed.

Appellant, by several assignments of error, complains of the court's refusal to give a number of instructions requested by appellant generally relating to the law of conversion. At the close of the testimony,

it was evident there were but two questions of fact to be determined by the jury. First, was it agreed between the parties that respondent was to receive one-half the clover seed for his services in harvesting the same, or was he to receive one-half the net proceeds of the clover crop, and, second, at the time the agreement was made between the parties, did respondent know the clover seed crop had already been contracted to the Edward L. Oakes Company? The court, in addition to giving the formal instructions, submitted such issues to the jury by Instruction No. 3, reading as follows:

"I instruct you that if you believe that the plaintiff has proven, by a preponderance of the evidence, that he was to receive one-half of said crop of clover seed and that he did not know that the crop had already been contracted for at 45 cents a pound, then the plaintiff would be entitled to the value of his one-half of said crop at the then prevailing price of 70 cents a pound, less certain deductions, but not to exceed $1,033.46, the amount prayed for.

"If, on the other hand, you believe that the defendant has proved, by a preponderance of the evidence, that the agreement was that the plaintiff was to receive one-half of the proceeds of said crop, and that the plaintiff knew said crop had been contracted for at the price of 45 cents per pound, then the plaintiff would be entitled to the sum of $664.42.

"In either event, of course, the plaintiff is entitled to a verdict of not less than $664.42, which sum the defendant has tendered him."

Assuming the instructions requested by appellant were correct statements of law relative to conversion, the giving of such instructions would have tended to confuse rather than enlighten the jury on the issues which it had to decide. The issues were fully and fairly presented to the jury by the instructions given by the court and the failure to give appellant's requested instructions was not reversible error. Reinhold v. Spencer, 53 Idaho 688, 26 P.2d 796; Clark v. Alloway, 67 Idaho 32, 170 P.2d 425; Cogswell v. C. C. Anderson Stores Co., 68 Idaho 205, 192 P.2d 383.

Appellant's remaining assignments of error do not raise any substantial questions in addition to those discussed herein. The order of the trial court denying the motion for new trial and the judgment are affirmed. Costs awarded to respondent.

GIVENS, C. J., and TAYLOR, THOMAS and KEETON, JJ., concur.