## In re LUNDERS' ESTATE.

### No. 8017.

Supreme Court of Idaho.

Dec. 1, 1953.

Rehearing Denied Dec. 21, 1953.

Givens, J., dissented.

Paul C. Keeton, Lewiston, for appellant.

Thomas A. Madden, Lewiston, for respondent.

PORTER, Chief Justice.

Pursuant to proceedings duly had, an order was entered in the Probate Court of Lewis County on April 29, 1949, admitting to probate the purported last will and testament of one John S. Lunders, deceased. On the same date, the court made an order appointing John Sylvester Lunders, Marie K. Lantz and Thomas A. Madden as executors of said last will and testament.

On August 24, 1949, appellant, Anna Reed, filed a petition to revoke the probate of such will and to revoke the order appointing executors thereof. In such petition, appellant alleged generally that by reason of his age and physical condition the mental faculties of deceased had become so impaired that he was easily influenced by those in whom he had confidence; and that in making such purported will the decedent acted under the will and influence of John Sylvester Lunders to such an extent that his act in executing the same was not his own voluntary act and deed, but that his own will was supplanted by the will and purpose of the said John Sylvester Lunders.

John Sylvester Lunders, individually, and the executors filed an answer denying generally the allegations of the petition. A trial was had on the issues before the Probate Judge of Lewis County and resulted in an order denying relief to petitioner. An appeal was taken to the District Court of the Tenth Judicial District in and for the County of Lewis where a trial de novo was held before the court sitting without a jury.

Upon completion of appellant's evidence a motion for nonsuit was made by respondents which motion was by the court granted and a judgment of nonsuit against appellant was duly entered. From such judgment appellant has appealed to this court.

The controversy between appellant and her sisters, Florence C. Lunders and Marie K. Lantz, has been settled and the appeal dismissed as to such respondents.

The principal contention of appellant on this appeal is that the trial court erred in granting the motion for nonsuit. A motion for nonsuit admits all the facts the evidence of plaintiff tends to prove and all reasonable inferences that can be drawn therefrom. The evidence must be viewed in the light most favorable to plaintiff and the question for the court to determine is whether there is any competent evidence legally sufficient to make a prima facie case on behalf of plaintiff. Bogovich v. Capitol Silver-Lead Mining Co., 71 Idaho 1, 224 P. 2d 1078; Black v. Darrah, 71 Idaho 404, 233 P.2d 415; Estate of Randall, 58 Idaho 143, 70 P.2d 389; 64 C.J., Trials, Secs. 1024–1028, pp. 1212–1213.

Let us examine the underlying facts which were presented to the court by appellant's evidence. In the year 1948, John S. Lunders was a widower, 86 years of age. He had five children, namely, Anna Reed, Florence C. Lunders, Marie K. Lantz, John Sylvester Lunders and Joseph Lunders. He had been living from time to time with various members of his family. In the month

of November, 1948, he moved a trailer house onto his property generally referred to as the home in the Thomas Addition in the City of Lewiston. On November 8, he apparently fell on the steps of the trailer house and probably fractured three ribs. He laid out in the cold until found and taken into the house by the lady living on the premises. He was removed to the hospital where he remained until November 15, when he was taken by his son, John Sylvester, to the son's home near Craigmont. On November 27, he was still too weak and sick to attend the funeral of his younger son, Joe, at Craigmont.

On November 29, he was taken by John Sylvester to Lewiston and to the office of his attorney, Thomas A. Madden, for the purpose of making a new will. John Sylvester and deceased remained in Lewiston until December 1, when the will in question was executed. At the same time a warranty deed was made by deceased conveying to John Sylvester 160 acres of land which land formed a substantial part of the estate of deceased.

In determining the legality of a will the instrument itself may be examined and if it appear unnatural, unjust or irrational, such fact may be taken into consideration. In re Heazle's Estate, Idaho, 257 P.2d 556; In re Arnold's Estate, 16 Cal.2d 573, 107 P.2d 25. An inspection of the purported will shows that the testator made specific bequests to each of his four surviving children and devised the residue of his estate equally to his son, John Sylvester, and his two daughters, Marie K. Lantz and Florence C. Lunders. Appellant, Anna Reed, was excluded from participating in the residue of the estate. The will makes specific bequests of certain described real estate to each of the children. However, the inventory of the estate filed by the executors shows that the estate only owns an undivided one-half interest in each of the parcels of real estate willed to the children.

The appraised value of the undivided one-half interest in the real estate bequeathed to John Sylvester is the sum of $4,000. The appraised value of the undivided one-half interest in the real estate bequeathed to Florence C. Lunders, is the sum of $1,980. The appraised value of the undivided one-half interest in the real estate bequeathed to Marie K. Lantz, is $2,560. The appraised value of the undivided one-half interest in the real estate bequeathed to Anna Reed, appellant, is the sum of $400. And, in addition, she received a bequest of $25 cash. The total appraised value of the estate is $77,601.46. Deducting the $8,965 of specific bequests leaves $68,636.46 as the residuary estate to be divided among John Sylvester, Florence C. Lunders and Marie K. Lantz, giving each one the sum of $22,878.82.

It thus appears that under the will, the share of John Sylvester is $26,878.82. In addition he received the lands described in warranty deed hereinbefore referred to. The value of such lands and whether any consideration was paid for same is not de-

452

terminable from the record. The share of Florence C. Lunders under the will is $24,-858.82. The share of Marie K. Lantz under the will is $25,438.82. Of course, these shares will be reduced as the residuary estate is reduced by the cost and expense of probating the estate. Appellant, Anna Reed, receives under the will $425.

Appellant, from the evidence, is apparently in poor financial circumstances. Prior to 1937 she lost her home. She lived with her father from 1943 to 1946, and again for a time in 1948. There is nothing in the evidence to indicate any ill-will by the deceased toward appellant—nothing to explain his action in disinheriting appellant.

The record is replete with evidence of the weakened physical and mental condition of deceased at the time the purported will was made on December 1, 1948. He was taken to the hospital in March, 1949, and died on the first day of April. Appellant testified to the extreme weakened physical condition of her father at the time of his accident; that during 1948 he was "getting awfully childish", and as to his physical and mental condition, she observed "an awful lot of change" in her father.

Witness, William Lantz, testified that he saw the deceased on November 27, 1948 and asked him to go to the funeral of his son, Joe, and that "Well, he didn't look very good to me; he looked like a very sick man."

The witness, Marie K. Lantz, being one of the executors of the will, was called on direct examination for appellant. She testified to seeing her father shortly before the funeral of Joe Lunders. She testified, "Well, he was pretty darn weak like," and "Well, he was an old man, and he was pretty badly bothered about the way everything went." She testified that she could see a change in the mentality of her father "due to age and forgetfulness and stuff like that."

Florence C. Lunders was called as a witness on behalf of appellant. She testified that her father came to live with her in June, 1948, and lived with her until he went to Lewiston just prior to his accident. In reply to questions as to his physical condition, she testified that he was unable to control his bodily functions. In connection with his mental condition she testified to a number of odd and irresponsible things that he did. She testified: "Well, he came into the house one day with a pair of pliers in one hand and a bolt in the other, and I said: 'What's the matter with you? Can't you get the nut off the bolt?' And he said, 'No, my head is in such terrible shape I can't think of anything.'" And, "he was quarreling all the time; accusing me of stuff that I didn't do,—one thing and another thing. It was impossible to live with him."

Prior to the execution of the will the testator made a number of statements to appellant to the effect that the property in Lewiston in the Thomas Addition would be willed to appellant. It would appear from the evidence that appellant formerly owned the property as a home, but lost it. It was acquired by the witness, Fred Wooster, a

real estate man. In 1937 he sold the property to John S. Lunders and transferred it to Lunders and wife by quitclaim deed. After the sale, the witness continued to collect the rent for Mr. Lunders. He testified:

"A. At the time he wanted to purchase this property he informed me that he wanted to redeem it to protect Mrs. Reed's interest, and he specifically mentioned Mrs. Reed and no one else. And I didn't pay very much for it and I didn't get very much for it when I sold it. I presume it was worth ten times what I sold it for or maybe twenty times what I sold it for, but inasmuch as he wanted to redeem it for Mrs. Reed and that it had been her home I thought I should let him have it.

"Mr. Madden: If the Court please, we will move to strike the testimony of the witness, except the parts pertaining to his conversation with Mr. Lunders, as being non-responsive and as statements of conclusion. The witness might be instructed to answer the question.

"The Court: The motion will be granted, and you will confine yourself to the conversation as nearly as you can.

\* \* \* \* \* \*

"Q. On the occasions when you would ask him if he wanted to sell this property would you state to the Court in substance what his reply would be?

A. I can tell you exactly what he said; he said, no, he didn't want to sell it, because he was saving it for Mrs. Reed."

The witness, Wilbur D. Henry, testified that in May or June, 1947, he went to see John S. Lunders to try to purchase the property in the Thomas Addition. He testified:

"Q. And would you tell the Court what happened when you went there to purchase this place? A. Well, I asked him if I could buy it, and he said 'What would you give for it? What do you think it is worth?' And I said: 'I'll give you ten thousand dollars for it.' And he says; 'No, I can't sell that, because,' he says, 'that belongs to Anna.' He says: 'That's Anna's, because she is the only one that helped me.' He made that statement, and he made it many times to me."

He further testified to a conversation with Mr. Lunders in June, 1948, as follows:

"A. Well, I told him I needed more room, and I would like to buy that property, and he said 'No, that's for Anna.'"

Mrs. Jennie Henry testified that she lived on the premises in question from about 1939 to 1948. That she attempted to purchase the property on two occasions from Mr. Lunders in 1944 and 1948 and that Mr. Lunders on both occasions told her in effect that he would not sell the property because he was saving it for his daughter, Mrs.

Reed, and that it belonged to Anna Reed when he got his money out of it.

The purported will provides that the executors shall serve without bond, an unusual provision when the executors are strangers or not the sole heirs. The will contains four somewhat involved descriptions of real estate. We may consider the questionable testimony of John Sylvester that the testator at the time of making the will got such descriptions from "right in his own head" when the estate contains twelve separately described parcels of real estate. The record also shows his apparently improbable statement he did not know his father was about to make a will when they went to the attorney's office; and his obvious reluctance to testify when called for cross-examination under the statute.

■ Undue influence has been in effect defined as domination by the guilty party over the testator to such an extent that his free agency is destroyed and the will of another person substituted for that of the testator. In re Arnold's Estate, 16 Cal.2d 573, 107 P.2d 25; Cox v. Hale, 217 Ala. 46, 114 So. 465; Passenheim v. Reinert, 362 Ill. 576, 1 N.E.2d 69; In re Cox's Will, 139 Me. 261, 29 A.2d 281; Wilthoft v. Gathe, 38 Idaho 175, 221 P. 124.

In Estate of Randall, 60 Idaho 419, 93 P. 2d 1, we held that in order to show undue influence it is not necessary to prove circumstances of either actual domination or coercion; that the only positive and affirmative proof required is of facts and circumstances from which undue influence may be reasonably inferred, for instance, that the beneficiary was active in the preparation and execution of the will. We further held that the mere existence of a confidential relation between a testator and a beneficiary in his will does not establish undue influence unless it appears that the beneficiary was active in the preparation and execution of the will.

In the case of In re Arnold's Estate, 16 Cal.2d 573, 107 P.2d 25, at page 29, the court said:

"In the Estate of Baird, 176 Cal. 381, 384, 168 P. 561, 563, we find the applicable rule stated in the following concise language: 'As suggested in Estate of Higgins, 156 Cal. (257) 261, 104 P. (6) 8, a "presumption of undue influence" arises from proof of the exercise of a confidential relation between the testator and such a beneficiary, "coupled with activity on the part of the latter in the preparation of the will." The confidential relation alone is not sufficient. There must be activity on the part of the beneficiary in the matter of the preparation of the will.' "

In re Hannam's Estate, 106 Cal.App.2d 782, 236 P.2d 208, at page 210, the court said:

"Direct evidence as to undue influence is rarely obtainable and hence a court or jury must determine the issue of undue influence by inferences drawn

from all the facts and circumstances. Taken singly the facts or circumstances may be of little weight, but taken collectively they acquire their proper weight and may then be sufficient to raise a presumption of undue influence."

■ The weakened mental and physical condition of a testator are factors to be considered in determining the question of undue influence. In re Sproston's Estate, 4 Cal.2d 717, 52 P.2d 924; In re Gill's Estate, 14 Cal.App.2d 526, 58 P.2d 734; Estate of Brown, 52 Idaho 286, 15 P.2d 604. In Witthoft v. Gathe, 38 Idaho 175, at page 180, 221 P. 124, at page 126, it is recognized that "A person enfeebled in mind and body, though still retaining testamentary capacity, may be more readily swayed and influenced by those about him, than when in his normal condition; * * *."

■ Applying the foregoing tests to the evidence on behalf of appellant as herein outlined, such evidence appears sufficient to make a prima facie case on behalf of appellant and to raise a presumption of undue influence, requiring evidence on the part of respondents to rebut the same. The trial court erred in sustaining the motion for nonsuit and thereupon entering judgment against appellant.

■■ Appellant also contends that the trial court erred in refusing to admit in evidence appellant's offered Exhibit No. 2 being the warranty deed executed by the testator in favor of John Sylvester Lunders at the time of the execution of the will, and that the court was unduly restrictive of the testimony offered on behalf of appellant. The exhibit in question was offered during the cross-examination under the statute of John Sylvester Lunders. It having been shown that by such deed a substantial portion of the estate of the testator was transferred, at the identical time the will was made, to the respondent charged with having exercised undue influence, the court erred in refusing to admit the exhibit in evidence. Furthermore, the criticism by appellant that the court was unduly restrictive in his rulings is well taken. Any competent evidence which tended to throw light upon the issues should have been admitted.

■ As this matter is being remanded to the trial court for new trial, we call attention to the fact that the trial court erroneously required respondents to make formal proof at the opening of the trial of the facts necessary to be proved in order to admit a will to probate. This cause is one where the will had already been admitted to probate and was a proceeding to revoke the order admitting the will to probate. The burden was upon appellant as plaintiff to proceed in the first instance and to sustain the burden of proof. Sections 15–213 and 15–225, I.C.; Schwarz v. Taeger, 44 Idaho 625, 258 P. 1082; Swaringen v. Swanstrom, 67 Idaho 245, 175 P.2d 692.

The judgment of nonsuit entered by the trial court in favor of respondents is re-

versed and the cause remanded for new trial. Costs awarded to appellant.

TAYLOR and THOMAS, JJ., and GRAF, D. J., concur.

GIVENS, Justice (dissenting).

The majority opinion states:

" * * *; that the only positive and affirmative proof required is of facts and circumstances from which undue influence may be reasonably inferred, for instance, that the beneficiary was active in the preparation and execution of the will."

Not a single word of testimony and nothing in the opinion shows John Sylvester Lunders did anything or had anything to do with or said anything to anybody about the preparation and execution of the will. He merely took his father to the lawyer's office.

The majority opinion further states:

"We further held that the mere existence of a confidential relation between a testator and a beneficiary in his will does not establish undue influence unless it appears that the beneficiary was active in the preparation and execution of the will."

There being no active, or any, participation in the preparation of the will, under the majority's own statement, the confidential relationship of father and son is insufficient.

Knowing his father was going to make a will shows no influence by the son.

John Sylvester Lunders accepted a deed to certain property on the day the will was made. Not one word, nor did any question enlighteningly and conclusively pursue, how or why his father happened to make this deed to him—certainly there was no showing nor any inquiry as to any affirmative action by the son in connection therewith. It was not necessary that the deed be in evidence for appellant to cross-examine in regard to it and she did cross-examine about it.

The only grounds of dissatisfaction with this will are, that appellant was in straightened circumstances, and was virtually disinherited. The majority say, in effect, the will is unjust. Who is to determine that? Who, but the testator?

This Court quoted with approval from Perkins v. Perkins, 116 Iowa 253, 90 N.W. 55, thus:

" 'While, as every lawyer knows, a man may be capable of making a good will after he is so far gone into imbecility and mental darkness as to be no longer capable of making a valid deed or of transacting business generally, the very opposite conclusion seems to pervade the lay mind, and the making of a will is, to its apprehension, the one item of business which requires the presence of all one's faculties in their normal strength.' "   Schwarz v. Taeger, 44 Idaho 625, at page 631, 258 P. 1082, at

page 1084, cited in the majority opinion; Marker v. McCue, 50 Idaho 462, at page 465, 297 P. 401; Hedin v. Westdala Lutheran Church, 59 Idaho 241, at page 251, 81 P.2d 741.

All presumptions are in favor of a will properly executed as herein. 68 C.J. 444, § 43.

Nothing shows John Sylvester Lunders or the other two daughters had anything to do with not requiring a bond from the executors.

The record fully justified the learned trial court in his analysis of the evidence before him and upon which he based his nonsuit:

"The motion will be granted by the Court for the reasons mentioned by Mr. Madden; that the proof has not been such as to overturn a written will witnessed by persons or a person who stated that the decedent was competent at the time and duly executed the will. There are hints, and it could be presumed from the evidence, by indulging in presumption, that there was some feeling that this old gentlemen wasn't completely at himself as far as a difficult negotiation is concerned, but the Court understands the rule to be that a decedent does not have to have the youth and health of a young person to be competent to make a will, so far as testamentary capacity is concerned. There is no actual proof of undue influence. The evidence shows only the

opportunity for those two things to exist without actual proof thereof, and the Court feels that a will must be sustained if it is possible to do so and it cannot be overturned without actual definite proof that it is not the will of the deceased."

The majority cites In re Arnold's Estate, 16 Cal.2d 573, 107 P.2d 25 and In re Heazle's Estate, Idaho, 257 P.2d 556, 558, as supporting the proposition if a will appear unnatural, unjust or irrational, the unnatural, unjust or irrational character of the will may be taken into consideration in determining its legality. Of course, if a person were so irrational he did not possess testamentary capacity, the will would be illegal. The Court said in the Heazle case, supra:

" * * *, where a will is unnatural, unjust, or irrational, such fact, though not controlling, may be taken into consideration in determining the competency of the author."

There is no showing in the evidence the will herein is irrational.

It is contended it is so unnatural and unjust it must, perforce, fail. The provisions of the will in the Heazle case and the one herein are quite different and the cases cited under the general text would not support holding this will is so unnatural as to show the result of lack of testamentary capacity. 68 C.J. 452, § 51.

As to the applicability of In re Arnold's Estate, supra, the will therein being held

valid, quoting some of the specific announcements in that case shows it fully sustains the judgment of nonsuit herein [16 Cal.2d 573, 107 P.2d 27]:

"In an action to set aside a will of a deceased person on the ground of undue influence, it is necessary to show that the influence was such as, in effect, to destroy the testator's free agency and substitute for his own another person's will. Estate of Motz, 136 Cal. 558, 583, 69 P. 294. Evidence must be produced that pressure was brought to bear directly upon the testamentary act. In re McDevitt's Estate, 95 Cal. 17, 33, 30 P. 101. Mere general influence, however strong and controlling, not to bear upon the testamentary act, is not enough; it must be influence used directly to procure the will, and must amount to coercion destroying free agency on the part of the testator. Estate of Keegan, 139 Cal. 123, 127, 72 P. 828. It is further held that mere opportunity to influence the mind of the testator, even coupled with an interest or a motive to do so, is not sufficient. Estate of Easton, 140 Cal.App. 367, 371, 35 P.2d 614.

" 'The unbroken rule in this state is that the courts must refuse to set aside the solemnly executed will of a deceased person upon the ground of undue influence unless there be proof of "a pressure which overpowered the mind and bore down the volition of the testator at the very time the will was made." ' Estate of Gleason, 164 Cal. 756, 765, 130 P. 872, 876.

\* \* \* \* \* \*

"Conceding, simply for the purpose of argument, that a confidential relation was proved to have existed between Mrs. Logan and Arnold, proof of that fact alone did not cast the burden of proof upon her that the will was not obtained by her through undue influence. Estate of Purcell, 164 Cal. 300, 303, 128 P. 932. In that case it was held that proof of a confidential relationship did not bring into play a presumption of undue influence in the absence of evidence that the beneficiary suggested the terms of the will. In the Estate of Baird, 176 Cal. 381, 384, 168 P. 561, 563, we find the applicable rule stated in the following concise language: 'As suggested in Estate of Higgins, 156 Cal. (257) 261, 104 P. (6) 8, a "presumption of undue influence" arises from proof of the exercise of a confidential relation between the testator and such a beneficiary, "coupled with activity on the part of the latter in the preparation of the will." The confidential relation alone is not sufficient. There must be activity on the part of the beneficiary in the matter of the preparation of the will.'

"In an unbroken line of decisions of this court, the above statement of law has been approved. (Cases cited.)"

The judgment of nonsuit should be affirmed.